No. 03-574

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 314

IN THE MATTER OF THE ESTATE OF

ALVARETTA M. JAMES, Deceased.

APPEAL FROM:     District Court of the Fifth Judicial District,
                 In and for the County of Beaverhead, Cause No. DP 99-4782
                 The Honorable Loren Tucker, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Michael Scott Winsor, Winsor Law Firm, Helena, Montana

        For Respondent:

                Catherine S. Sands, Attorney at Law, Dillon, Montana


                                        Submitted on Briefs:  December 11, 2003

                                                  Decided:  November 12, 2004

Filed:

        _____
                             Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Delbert Hunt (Hunt) and the Monte Christo Mining Company (collectively, "Appellants") appeal a judgment of the Fifth Judicial District Court, Beaverhead County, which voided a purported sale of the Alvaretta James Estate's interest in certain property and which ordered in-kind distribution of corporate assets to the Estate.

¶2 We affirm in part, and remand for further proceedings.

¶3 We address the following issues on appeal:

¶4 1. Did the District Court err by granting the Estate's petition to obtain assets in kind (rather than in cash) in distribution?

¶5 2. Did the District Court err when it voided the sale, which former directors of the defunct Monte Christo Mining Company purported to conduct, of the Estate's interest in certain property, and ordered appellant Hunt to deed real property to the Estate?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6 The present appeal is the second taken from orders issued by the District Court in this case. In *Estate of James v. Hunt* (2002), 312 Mont. 525N, 55 P.3d 419N (hereinafter, *Estate of James I*), we held that the District Court did not err when it ruled that (1) the former Monte Christo Mining Company had been subjected to involuntary dissolution by the Montana Secretary of State, and (2) that Hunt's attempt to reinstate the corporation after its dissolution merely resulted in the creation of a new corporation with the same name as the

2

old, rather than a reinstatement thereof.[1] We then remanded the case for clarification of the District Court's order. We incorporate herein the factual and procedural background set forth in *Estate of James I*.

¶7 Pursuant to our Opinion in *Estate of James I*, the Estate's personal representative, Darlene M. Rose (Rose), petitioned the District Court for in-kind distribution of the Estate's real property, which she claimed was then being held by trustees of Monte Christo. The hearing on this motion was scheduled for March 11, 2003. On March 4, 2003, MCMC's Board of Directors purported to liquidate the Estate's property interests by sale to one of its members, Shirley Groff, a former officer and trustee of Monte Christo. The price was one hundred twenty-five dollars, a sum arrived at by referring to the old Monte Christo shareholders' agreement. Ms. Groff and Donald Hand, "as trustees of the dissolved Monte Christo Mining Company," then moved the District Court to dismiss the Estate's petition for in-kind distribution as moot. To justify the sale, they cited a portion of our *Estate of James I* Opinion, and § 35-6-104(5), referred to therein, both of which they construed as requiring in-cash distribution of the property interest.

¶8 This move did not sit well with the District Court. In his subsequent order, Judge Tucker voided the liquidation sale on equitable grounds, characterizing it as an attempt to deprive his court of jurisdiction by means of a deal made by insiders in violation of fiduciary duties owed to the beneficiary of a trust. Ruling, moreover, that neither § 35-6-104(5) nor

---

[1] As we did in *Estate of James I*, we will refer to the former, dissolved, Monte Christo Mining Company as "Monte Christo," and to the current corporation of that name as "MCMC."

the statutes which it, in turn, references, require in-cash distribution, he ordered Monte Christo's former directors to immediately distribute to the James Estate its fractional share of the assets of the defunct corporation in kind. Judge Tucker did not address the argument that Appellants base on our *Estate of James I* Opinion.

## STANDARD OF REVIEW

¶9 We review findings of fact to determine whether they are clearly erroneous and conclusions of law to determine whether they are correct. *Dome Mountain Ranch, LLC v. Park County* (2001), 307 Mont. 420, ¶ 12, 37 P.3d 710, ¶ 12 (citations omitted). The District Court did not expressly divide its order into findings and conclusions, but the issues raised by Hunt and Monte Christo implicate both fact and law.

## DISCUSSION

¶10 *1. Did the District Court err by granting the Estate's petition to obtain assets in kind (rather than in cash) in distribution?*

¶11 Appellants claim that we ruled in *Estate of James I* that Rose must pursue an in-cash distribution, that an in-cash distribution thus became the law of the case, and that the District Court therefore clearly erred in ordering distribution in kind. We disagree.

¶12 The portion of *Estate of James I* which Appellants interpret as having ordered in-cash distribution reads as follows:

> The District Court correctly determined MCMC is not a reinstatement of the dissolved Monte Christo, as discussed above. Liquidation of the property and assets of an involuntarily-dissolved corporation is governed by § 35-6-104(5), MCA, and the statutes referenced therein. Thus, Hunt has not established that he has any authority to require the Estate to take shares of stock in MCMC in exchange for its shareholder interest in Monte Christo. Because this proceeding does not concern all of Monte Christo's corporate assets, but only the Estate's stock in that dissolved corporation, the District Court appropriately limited the scope of its order to instructing Rose to "take such steps as are required by law to distribute the property of the estate to the heirs and beneficiaries of the estate." *We presume the District Court meant in that*

4

> *portion of its order, and in its statement concerning "the then existing shareholders" and "the real estate owned by the then existing corporation," that Rose should pursue liquidation of the assets of Monte Christo as provided in § 35-6-104(5), MCA, and the other statutes referenced therein.*

*Estate of James I*, ¶ 22 (emphasis added). Appellants argue that the italicized sentence required an in-cash distribution.

¶13    The issue of precisely how the Estate should receive its distribution from the assets of the dissolved Monte Christo, however, was not before this Court in *Estate of James I*. Rather, we simply held that the District Court did not err when it ruled that the Estate was entitled to such a distribution. The text of the paragraph which follows the one that Appellants rely upon confirms this conclusion, and properly delimits the judgment we rendered on this point: "We hold the District Court did not err when it confirmed that Monte Christo had been dissolved and ordered distribution of the Estate's property." *Estate of James I*, ¶ 23.

¶14    According to the "law of the case" doctrine, where this Court upon an appeal, in deciding a case presented, states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal. *Federated Mut. Ins. Co. v. Anderson*,1999 MT 288, ¶ 60, 297 Mont. 33, ¶ 60, 991 P.2d 915, ¶ 60. Since we did not decide, in *Estate of James I*, how distribution should be effectuated, the law-of-the-case doctrine did not apply so as to limit the District Court's discretion in this regard.

¶15    Even if the italicized sentence announced a mandate from this Court, which it clearly did not, it would not have prevented the District Court from ordering distribution to the Estate in kind. Section 35-1-935, MCA, prescribes the effect of the dissolution to which the Montana Secretary of State subjected Monte Christo. It provides that a dissolved corporation may do nothing except what is appropriate to wind up and liquidate its business and affairs,

5

including (b) disposing of its properties that will not be distributed in kind to its shareholders, and (d) distributing its remaining property among its shareholders according to their interests. *See* § 35-1-935, MCA. Subsection (b) allows for in-kind distribution of at least some of the corporate assets after dissolution. Subsection (d) provides that assets which were not liquidated under (b) or otherwise disposed of in payment of outstanding liabilities should be distributed in kind to the shareholders. Winding up and liquidation, therefore, may include in-kind distribution of corporate assets. *See also* Black's Law Dictionary 839 (5th ed. 1979) ("Liquidation: Winding up of corporation so that assets are distributed to those entitled to receive them").

¶16    We therefore hold that the District Court did not err in ordering an in-kind distribution to the Estate.

¶17    ***2. Did the District Court err when it voided the sale, which former directors of the defunct Monte Christo Mining Company purported to conduct, of the Estate's interest in certain property, and ordered appellant Hunt to deed real property to the Estate?***

¶18    The District Court, in the ruling challenged in *Estate of James I*, determined that Hunt and MCMC had no right or title to, or interest in, the real estate owned by Monte Christo, and ordered that Hunt should "have and take nothing of the property or assets" of the dissolved corporation. Hunt objected to this ruling, and requested clarification of the District Court's order, pointing out that certain Monte Christo shareholders had sold him their stock in the former company. The Estate conceded that the District Court may have erred in this regard. We accordingly remanded to allow the District Court to clarify its order. *Estate of James I*, ¶¶ 25-26.

¶19    By way of clarification on remand, the District Court amended its prior order to "recognize that Delbert Hunt and Monte Christo Mining Co[mpany] are entitled to retain whatever rights they may have acquired when Delbert Hunt purchased stock from Monte Christo's shareholders."

6

¶20    Appellants elaborate on these purchases in their brief:

> Delbert Hunt made offers to each and every one of the stockholders of Monte Christo mining wherein he offered to purchase *both the land donated to the corporation and each individual shareholder's stock in the corporation.* Each of them, except the estate of Alvaretta James, accepted the offer and took Delbert Hunt's money. This is a matter of record. [Emphasis added.]

¶21    The District Court found that Monte Christo's shareholders received a distribution in kind. We hold that the court did not clearly err in so finding, however informally the distribution was carried out. As noted above, Appellants themselves point emphatically to the fact that Hunt made offers to all of Monte Christo's former shareholders, without exception, for their interests in the assets formerly owned by that company, offers accepted by all but the Estate. *Estate of James I*, ¶¶ 25-26. Thus, by the time Hunt made these offers, the property, including the real property, formerly owned by Monte Christo had passed from the Monte Christo trustees' control back into that of the individual shareholders. Had it been otherwise, the shareholders could not have sold the property to Hunt, since it would have remained under the control of the Monte Christo trustees. Section 35-1-935, MCA.

¶22    Rights to the property which Alvaretta James deeded to Monte Christo when it was incorporated had therefore devolved upon her Estate when Hunt made his offer. The Estate's refusal of his offer retained those rights. Thus, MCMC's Board of Directors, lacking rights of ownership over the Estate's property, had no authority to sell it.

¶23    Appellants further argue that it was the testamentary intent of Alvaretta James that the property which the original shareholders deeded to Monte Christo upon incorporation should be preserved as an economic unit for mining purposes, and that the District Court consequently erred in ordering that the Estate should retain the property.

¶24    Appellants base their argument on two documents: the will of Alvaretta James, which does not specifically dispose of, or indeed even mention, the property at issue; and the Monte Christo stockholders' agreement, in which the original shareholders, including the decedent,

7

agreed that ownership of Monte Christo stock, which the shareholders received in exchange for the real property they deeded to the corporation, should generally be limited to those who then owned it.

¶25    Although this issue was raised below, the District Court did not address it in its final order.  It was also briefed by both the Appellants and the Respondent.  Since resolving this issue depends on a determination of the testamentary intent of Alvaretta James, a factual inquiry, we remand to the District Court for further proceedings.

¶26    Respondents raise the issue of imposing Rule 32 sanctions upon the Appellants on the grounds that they have brought a meritless appeal.  Given the procedural posture of this case, it is premature to address the issue.

¶27    Affirmed in part, and remanded for further proceedings.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE