JUSTICE LEAPHART
delivered the Opinion of the Court.
¶1 The State appeals from the District Court’s order determining that the State of Montana’s public school system violates Article X, Section 1(3), of the Montana Constitution. This Court issued an order on November 9, 2004, affirming the District Court. This opinion supersedes that order.
¶2 We restate the issues as follows:
¶3 1. Whether a challenge to the adequacy of the State’s funding of a basic system of free quality public elementary and secondary schools presents a non-justiciable political question.
¶4 2. Whether the District Court erroneously concluded that the current school funding system violates Article X, Section 1(3), by failing to provide adequate funding for Montana’s schools.
¶5 3. Whether the District Court erred in concluding that the State has violated Article X, Section 1(3), by not paying its share of the cost *307 of the public school system.
¶6 4. Whether the District Court erred in concluding that the State has violated Article X, Section 1(2), by not recognizing the cultural heritage of American Indians in its educational goals.
¶7 5. Whether the October 2005 effective date of the District Court’s opinion should be moved up to May 2005.
¶8 6. Whether the current school funding system violates the Equal Protection Clause of the Montana Constitution.
¶9 7. Whether an award of attorney fees is appropriate.
BACKGROUND
¶10 A coalition of schools, education groups, and parents (the Coalition) brought this action contending that the State has acted unconstitutionally in administering and funding Montana’s constitutionally-mandated public school system. After a three-week trial, the District Court found serious problems with the current school system, relating both to the manner in which the State funds its public schools and the educational product the schools are delivering. The District Court concluded that the current system violates the Public Schools Clause of Article X, Section 1(3), and the Indian Education Clause of Article X, Section 1(2). The District Court also concluded that the current school system does not violate the Equal Protection Clause of the Montana Constitution and that the Coalition should not be awarded attorney fees.
¶11 The State now appeals, arguing that we cannot reach the issue whether the current school system violates Article X, Section 1(3), because the issue is a political question. In the alternative, the State argues that the District Court wrongly concluded that the current school system violates Article X, Section 1(3). The Coalition cross-appeals, arguing that the court erred in concluding that the current school system does not violate Montana’s Equal Protection Clause, that the effective date of the court’s opinion should be moved from October 1, 2005, to May 1, 2005, and that the court erred in not awarding attorney fees. We conclude that, since the Legislature has implemented Article X, Section 1(3), the question whether the system it created violates the Constitution is not a political question. We affirm the court’s determination that the current system violates Article X, Section 1(3), but we also defer to the Legislature for the definition of “quality” as used in that constitutional provision. Furthermore, we affirm the effective date of the District Court’s opinion and vacate and remand the issue of attorney fees.
*308 STANDARD OF REVIEW
¶12 Whether an issue presents a non-justiciable political question is a legal conclusion that this Court reviews de novo. Northfield Ins. Co. v. Montana Ass’n of Counties, 2000 MT 256, ¶ 8, 301 Mont. 472, ¶ 8, 10 P.3d 813, ¶ 8. We review a district court’s findings of fact to determine whether they are clearly erroneous, In re Estate of James, 2004 MT 314, ¶ 9, 324 Mont. 24, ¶ 9, 102 P.3d 12, ¶ 9, and a district court’s discretionary rulings, such as the award or denial of attorney fees, for abuse of discretion. Johnson v. Hamilton, 2003 MT 199, ¶ 9, 317 Mont. 24, ¶ 9, 75 P.3d 778, ¶ 9; Mortgage Source, Inc. v. Strong, 2003 MT 205, ¶ 8, 317 Mont. 37, ¶ 8, 75 P.3d 304, ¶ 8.
DISCUSSION
ISSUE ONE
¶13 Whether a challenge to the adequacy of the State’s funding of a basic system of free quality public elementary and secondary schools presents a non-justiciable political question.
¶14 The State, relying on Baker v. Carr (1962), 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663, 686, asserts that questions arising under Montana Constitution Article X, Section 1(3), are non-justiciable under the political question doctrine. That section provides: “The legislature shall provide a basic system of free quality public elementary and secondary schools.” Of course, in interpreting our own Constitution, this Court need not defer to the United States Supreme Court. State v. Jackson (1983), 206 Mont. 338, 342, 672 P.2d 255, 257. Nonetheless, given the dearth of Montana precedent on the political question doctrine and the State’s reliance on federal doctrine, we look to the federal precedent for guidance in developing our own doctrine.
¶15 Both the United States Supreme Court and this Court recognize that non-self-executing clauses of constitutions are non-justiciable political questions. Baker, 369 U.S. at 217, 82 S.Ct. at 710, 7 L.Ed.2d at 686 (listing one factor of the federal political question doctrine as “the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion”); State ex rel. Stafford v. Fox-Great Falls Theatre Corp. (1942), 114 Mont. 52, 73, 132 P.2d 689, 700.
¶16 To determine whether the provision is self-executing, we ask whether the Constitution addresses the language to the courts or to the Legislature. Stafford, 114 Mont, at 73, 132 P.2d at 700. If addressed to the Legislature, the provision is non-self-executing; if addressed to the courts, it is self-executing. Stafford, 114 Mont, at 73- *309 74, 132 P.2d at 700. Louisiana’s Constitution once provided that “Gambling is a vice and the Legislature shall pass laws to suppress it.” State v. Mustachia (La. 1922), 94 So. 408, 409. In Stafford, we agreed with the Louisiana Supreme Court’s conclusion that provisions beginning “the Legislature shall” are non-self-executing provisions; as such, in Louisiana, gambling was legal unless the Legislature enacted a provision making it illegal. Stafford, 114 Mont, at 75-76, 132 P.2d at 701 (citing Mustachia, 94 So. at 409).
¶17 Like the Louisiana clause, Montana’s Public Schools Clause constitutes a directive to the Legislature: “The legislature shall provide a basic system of free quality public elementary and secondary schools.” Since the Public Schools Clause is non-self-executing, it presents a political question which, in the first instance, is directed to the Legislature and is non-justiciable. That determination, however, does not end the inquiry. As here, (1) once the Legislature has acted, or “executed,” a provision (2) that implicates individual constitutional rights, courts can determine whether that enactment fulfills the Legislature’s constitutional responsibility. City of Boerne v. Flores (1997), 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (determining, under the First Amendment, that the Religious Freedom Restoration Act of 1993 violates the Constitution despite Congress specifically implementing the Act through Section 5 of the Fourteenth Amendment, that provides that “[t]he Congress shall have power to enforce, by appropriate legislation, the provisions of this article.”).
¶18 Like Section 5 of the Fourteenth Amendment of the United States Constitution, provisions that directly implicate rights guaranteed to individuals under our Constitution are in a category of their own.[1] That is, although the provision may be non-self-executing, thus requiring initial legislative action, the courts, as final interpreters of the Constitution, have the final “obligation to guard, enforce, and protect every right granted or secured by the Constitution....” Robb v. Connolly (1884), 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542, 546. Thus the question whether Article X, Section 1(3), presents a “justiciable” controversy cannot be addressed in a vacuum. The clause *310 must be read in the context of any correlative individual rights guaranteed under the Montana Constitution.
¶19 In this case, the requirement that the Legislature shall provide a basic system of free quality public schools, must be read in conjunction with Section 1 of Article X, which guarantees a right to education. Kaptein ex rel. Kaptein v. Conrad Sch. Dist. (1997), 281 Mont. 152, 155, 931 P.2d 1311, 1313; see State ex rel. Bartmess v. Bd. of Trustees (1986), 223 Mont. 269, 275, 726 P.2d 801, 804-05. In the case sub judice, the Legislature has addressed the threshold political question: it has executed Article X, Section 1(3), by creating a basic system of free public schools. As the final guardian and protector of the right to education, it is incumbent upon the court to assure that the system enacted by the Legislature enforces, protects and fulfills the right. We conclude this issue is justiciable.
ISSUE TWO
¶20 Whether the District Court erroneously concluded that the current school funding system violates Article X, Section 1(3), by failing to provide adequate funding for Montana’s schools.
¶21 Article X, Section 1(3), of the Montana Constitution mandates that “[t]he legislature shall provide a basic system of free quality public elementary and secondary schools.... It shall fund and distribute in an equitable manner to the school districts the state’s share of the cost of the basic elementary and secondary school system.” As we have just stated, the Legislature has made an initial policy determination regarding this language. It has created a public school system and a method of funding the system. Although Article X, Section 1(3), is textually committed to the Legislature in the first instance, once the Legislature acts we are not barred from reaching the question of whether the Legislature has fulfilled its constitutional obligation to “provide a basic system of free quality public elementary and secondary schools.”
¶22 Although the Legislature has made an initial policy determination by establishing a public school system (the relevant consideration under the Political Question Doctrine), it has not made a determination as to the meaning of “quality.” Because the Constitution mandates that the Legislature provide a quality education, we determine that the Legislature can best construct a “quality” system of education if it first defines what is a “quality” system of education. In addition, even though we here defer to the Legislature as to what constitutes “quality,” given the unchallenged *311 findings of the District Court we do conclude that the educational product of the current school system is constitutionally deficient and that the Legislature currently fails to adequately fund Montana’s public school system.
¶23 The Montana Legislature created the current education funding system in 1993 with House Bill (HB) 667. The Legislature did so in response to a court challenge to the former system. Unlike in the current proceedings, that challenge was brought under the Equality of Educational Opportunity Clause. Mont. Const. Art. X, Sec. 1(1). We addressed the challenge in Helena Elementary Sch. Hist. No. 1 v. State (1989), 236 Mont. 44, 55, 769 P.2d 684, 690, where we concluded that the spending disparities among the State’s school districts constituted a denial of equality of educational opportunity as guaranteed by Article X, Section 1(1) of the Montana Constitution.
¶24 HB 667 sought to address those inequities. It did this by relying on a regression analysis designed to address spending and taxing disparities among school districts. Central to the funding system it instituted is the “general fund.” The general fund is the largest and most important part of a school district’s overall budget. Each school district’s general fund budget includes a basic entitlement lump sum from the State, the Average Number Belonging (ANB) entitlement, locally raised funds, and special education funds. A school district’s general fund budget has a built-in maximum and minimum, computed using a formula. Tellingly, most school districts currently either exceed their maximum budgets or are budgeting over 98 percent of the 100 percent they are allowed to spend. At trial some educators stated that their districts could not provide what they considered a “quality” education unless they were allowed to spend more than their general fund maximum.
¶25 This funding system is not correlated with any understanding of what constitutes a “quality” education. The evidence for this is twofold. First, as the State admitted at oral argument, in passing HB 667, the Legislature did not undertake a study of what the Public Schools Clause demands of it. That is, it did not seek to define “quality.” As stated above, since the Legislature has not defined “quality” as that term is used in Article X, Section 1(3), we cannot conclude that the current funding system was designed to provide a quality education. Second, as found by the District Court, the Legislature, in creating the spending formula of HB 667, did not link the formula to any factors that might constitute a “quality” education.
¶26 The District Court found that the “major problems” with HB 667 *312 were: it provided no mechanism to deal with inflation; it did not base its numbers on costs such as teacher pay, meeting accreditation standards, fixed costs, or costs of special education; increases in allowable spending were not tied to costs of increased accreditation standards or content and performance standards; relevant data was already two years old when the bill was passed; and no study was undertaken to justify the disparity in ANB dollars dispensed to high schools as compared to elementary schools. From these credible findings we must conclude that the Legislature did not endeavor to create a school funding system with quality in mind. Unless funding relates to needs such as academic standards, teacher pay, fixed costs, costs of special education, and performance standards, then the funding is not related to the cornerstones of a quality education. We also note that in Helena Elementary we stated that “the accreditation standards establish a minimum upon which quality education can be built” but “do not fully define either the constitutional rights of students or the constitutional responsibilities of the State of Montana for funding its public elementary and secondary schools.” Helena Elementary, 236 Mont. at 57, 769 P.2d at 692.
¶27 Without an assessment of what constitutes a “quality” education, the Legislature has no reference point from which to relate funding to relevant educational needs. In the absence of a threshold definition of quality, we cannot conclude that the system is adequately funded as required by Article X, Section 1(3).
¶28 The above analysis is essentially prospective in nature-that is, it states what the Constitution demands of the Legislature and what the Legislature must do to fashion a constitutional education system. Nonetheless, in order to address the Coalition’s claims we have to address the educational product that the present school system provides, not just the manner in which the Legislature funds that school system. Even given the absence of a definition of “quality” education, the District Court’s findings demonstrate that whatever legitimate definition of quality that the Legislature may devise, the educational product of the present school system is constitutionally deficient and that the Legislature currently fails to adequately fund Montana’s public school system.
¶29 The evidence that the current system is constitutionally deficient includes the following unchallenged findings made by the District Court: school districts increasingly budgeting at or near their maximum budget authority; growing accreditation problems; many qualified educators leaving the state to take advantage of higher *313 salaries and benefits offered elsewhere; the cutting of programs; the deterioration of school buildings and inadequate funds for building repair and for new construction; and increased competition for general fund dollars between special and general education.[2]
¶30 The State counters by arguing that the District Court should have considered output measures, such as test scores, in determining whether the current system is constitutional, and that under such measures Montana compares very favorably with other states. Indeed, Montana’s students often do perform quite well on standardized achievement tests. However, current test scores do not tell the whole story. First of all, a “system” of education includes more than high achievement on standardized tests. We have noted elsewhere, for example, that school districts have an interest in integrating their academic programs with extracurricular activities. Kaptein, 281 Mont. at 162, 931 P.2d at 1317. Secondly, it may be that test scores are not attributable to the current educational system. The voluminous evidence presented at trial and summarized in the preceding paragraph established that although Montana’s students are testing well when compared with students in similar states, there are serious concerns as to whether this level of achievement will continue. With the District Court’s findings of fact in mind, it may be that the achievement registered by Montana’s students is not because of the current educational system.
¶31 Therefore, because the Legislature has not defined what “quality” means we cannot conclude that the current system is designed to provide a “quality” education. Article X, Section 1(3), explicitly requires the Legislature to fund a “quality” educational system. Therefore we defer to the Legislature to provide a threshold definition of what the Public Schools Clause requires. We also conclude, however, that given the unchallenged findings made by the District Court, whatever definition the Legislature devises, the current funding system is not grounded in principles of quality, and cannot be deemed constitutionally sufficient.
ISSUE THREE
¶32 Whether the District Court erred in concluding that the State has violated Article X, Section 1(3), by not paying its share of the cost of the *314 public school system,
¶33 In light of our holding on issue number two above, we decline to address this issue.
ISSUE FOUR
¶34 Whether the District Court erred in concluding that the State has violated Article X, Section 1(2), by not recognizing the cultural heritage of American Indians in its educational goals.
¶35 The District Court concluded that the State has failed to recognize the distinct and unique cultural heritage of American Indians and that it has shown no commitment in its educational goals to the preservation of Indian cultural identity, as demanded by Article X, Section 1(2). It relied on our opinion in Helena Elementary, when we held that the “provision establishes a special burden in Montana for the education of American Indian children which must be addressed as part of the school funding issues.” Helena Elementary, 236 Mont. at 58, 769 P.2d at 693. The State does not contest these conclusions. “This Court will not endeavor to review a matter when appellant has directed no argument toward it.” Sands v. Nestegard (1982), 198 Mont. 421, 428, 646 P.2d 1189, 1193. Therefore, we merely recognize that the findings and conclusions of the District Court regarding Article X, Section 1(2), of the Montana Constitution stand unchallenged.
ISSUE FIVE
¶36 Whether the October 2005 effective date of the District Court’s opinion should be moved up to May 2005.
¶37 We affirm the District’s Court’s selection of October 1,2005, as the effective date of its order.
ISSUE SIX
¶38 Whether the current school funding system violates the Equal Protection Clause of the Montana Constitution.
¶39 The District Court concluded that the present system violates Article X, Section 1(3), of the Montana Constitution (basic system of free quality public schools), but not Article II, Section 4 (equal protection). Since we have concluded that the present system violates Article X, Section 1(3), we need not address the question of whether the system complies with the Equal Protection Clause of Article II, Section 4. See Helena Elementary, 236 Mont. at 55, 769 P.2d at 691. Similarly, when the District Court concluded that the present system violates Article X, Section 1(3), it need not have addressed the *315 Coalition’s equal protection claim. Accordingly, we direct the District Court to vacate its conclusion that the system does not violate the Equal Protection Clause of Article II, Section 4, of the Montana Constitution.
ISSUE SEVEN
¶40 Whether an award of attorney fees is appropriate.
¶41 The District Court denied an award of attorney fees to the Coalition, citing our denial of attorney fees in Helena Elementary, 236 Mont. at 58-59, 769 P.2d at 693. It is true that we denied attorney fees in that case. However, as the Coalition correctly points out, our decision there was based on the “common fund” doctrine. Since Helena Elementary, we decided Montanans for the Responsible Use of the School Trust v. State ex rel. Board of Land Commissioners, 1999 MT 263, ¶ 67, 296 Mont. 402, ¶ 67, 989 P.2d 800, ¶ 67 (Montrust). In Montrust we awarded attorney fees pursuant to the private attorney general doctrine. The District Court erred in not addressing this change in our attorney fees jurisprudence. Therefore, we vacate the District Court’s denial of attorney fees and remand for reconsideration in light of Montrust.
JUSTICES COTTER, WARNER, NELSON, DISTRICT JUDGE RICE, sitting for FORMER JUSTICE REGNIER, concur.

 This contrasts constitutional mandates, for example, that “the legislature shall provide for a Department of Agriculture ...”, Art. XII, Sec. 1, and that “[t]axes shall be levied by general laws [that the Legislature passes] for public purposes,” Art. VIII, Sec. 1, 3, neither of which implicates individual rights guaranteed under the Constitution. See Montana Stockgrowers Ass’n v. Dep’t of Revenue (1989), 238 Mont. 113, 117, 777 P.2d 285, 288; Kottel v. State, 2002 MT 278, ¶ 52, 312 Mont. 387, ¶ 52, 60 P.3d 403, ¶ 52.

 Although we conclude that the above-enumerated findings of fact illustrate a constitutionally deficient educational system, we do not necessarily affirm every finding in the District Court’s opinion. See Order, November 9, 2004, No. 04-390.