STATE OF MONTANA ex rel. FORREST R. STEEN, PLAIN-
TIFF AND RELATOR, v. FRANK MURRAY, AS SECRETARY OF
STATE OF THE STATE OF MONTANA, DEFENDANT AND RE-
SPONDENT.

No. 10820.
Submitted July 22, 1964. Decided August 12, 1964.
394 P.2d 761.

Keller, Magnuson, Reynolds and Glen L. Drake, Helena, Melvin Magnuson and Paul Reynolds (argued), Helena, for plaintiff and relator.

Forrest H. Anderson, Atty. Gen., and Donald Garrity, Asst. Atty. Gen., Helena, Donald Garrity (argued), Helena, for respondent.

PER CURIAM.

This is an original proceeding initiated by a taxpaying resident by a complaint. This court accepted original jurisdiction and issued an order to show cause on July 10, 1964, ordering the secretary of state to appear on July 22, 1964, to show cause why he should not be perpetually restrained and enjoined from furnishing to the county clerks of the several counties copies of proposed Initiative Measure No. 63 and from performing any other act toward submitting said Initiative Measure No. 63 to the electors of the state at the next general election to be held November 3, 1964.

Answer was filed, briefs had, and oral argument heard on July 22, 1964. On July 24, this court issued an order for a permanent injunction. Such injunction issued, restraining the

secretary of state from doing anything further to place the measure on the ballot.

The full title and text of the proposed initiative measure is as follows:

"INITIATIVE NO. ——

"AN ACT TO PROHIBIT THE LEGISLATIVE ASSEMBLY FROM ENACTING LAWS PROHIBITING OR RESTRICTING GAMBLING IN THE STATE OF MONTANA AND REPEALING SECTIONS 94-2401 THROUGH 94-2432 INCLUSIVE, AND SECTION 94-1421, AND SECTIONS 94-3001 THROUGH 94-3011 INCLUSIVE OF THE REVISED CODES OF MONTANA, 1947, AS AMENDED, AND REPEALING ALL ACTS AND PARTS OF ACTS IN CONFLICT HEREWITH.

*"Be It Enacted by the People of Montana:*

"Sec. 1.    The Legislative Assembly of Montana shall have no power to prohibit gambling in this State.

"Sec. 2.    Sections 94-2401 through 94-2432 inclusive and Section 94-1421, and Sections 94-3001 through 94-3011 inclusive of the Revised Codes of Montana, 1947, as amended and all acts and parts of acts in conflict herewith are hereby repealed.

"Sec. 3.    This act shall take effect and be in full force from and after its passage and approval by the electorate."

Prior to June 23, 1964, an association calling itself the "Montana Association for Legalized Gambling" caused to be circulated throughout this state the above purported Initiative, by petition. Signatures were secured in all but one county of the state. Sufficient sections of the petition were certified by the various county clerks of the counties to the secretary of state to indicate that the petition bore 23,203 qualifying signatures. The total number of signatures required to qualify the petition to be placed on the ballot was 22,931. On June 23, pursuant to R.C.M.1947, § 37-104, the secretary of state advised the governor of the filing of the petition and of the fact that the number

of genuine signatures apparently was sufficient to meet the requirements of section 1, Article V of the Constitution of the State of Montana. The secretary of state advised the governor that the measure would be designated as Number 63 on the ballot.

On July 3, 1964, the governor issued a Proclamation as required by R.C.M.1947, § 37-104, and at the time of the filing of the complaint, the Proclamation was being published throughout the state as required by R.C.M.1947, § 37-104.

Chronologically, the next action of the secretary of state is that required by the provisions of Chapter 1 of Title 37, of the Revised Codes of Montana, 1947, for printing, the expenditure being what is agreed a "large sum."

The complaint alleged that the Initiative Measure is unconstitutional in that it:

Violates Article XIX, § 2, by attempting to authorize lotteries;

Violates Article V, § 23, because the subject is not clearly expressed in the title;

Violates Article V, § 1, of the Constitution because its single, broad and sweeping proviso is an attempt to suspend legislative authority and duty to enact laws, criminal and civil, for the protection of public morals and the general welfare of the people.

The complaint also alleged certain statutory defects as to the signatures, but this matter will not be herein discussed. The answer, so far as pertinent here, admitted all of the chronological facts, denied unconstitutionality, and attacked the jurisdiction of this court to determine the constitutional validity of proposed Initiative Measure No. 63.

Article XIX, § 2, of the Montana Constitution, reads:

"The legislative assembly shall have no power to authorize lotteries, or gift enterprises for any purpose, and shall pass laws to prohibit the sale of lottery or gift enterprise tickets in this state."

Article III, § 29, of the Montana Constitution, declares:

"The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

The provisions of Article XIX, § 2, are both mandatory and prohibitory. Proposed Initiative Measure No. 63 is directly opposed to Article XIX, § 2. Measure No. 63 would repeal sections 94-3001 through 94-3011 which sections deal with lotteries in so many words as required by Article XIX, § 2, supra.

The proposed Initiative Measure No. 63 refers only to "gambling"; it does not mention "lotteries" specifically but does so by code section reference. Even so, that lotteries are gambling has been determined by this court. In State ex rel. Leahy v. O'Rourke, 115 Mont. 502, 504, 146 P.2d 168, 169, this court said:

"Gambling is a generic term, embracing within its meaning all forms of play or game for stakes wherein one or the other participating stands to win or lose as a matter of chance. Play at lottery is gambling."

This court has ruled in a number of cases, always consistently. In State v. Cox, 136 Mont. 507, 511, 512, 349 P.2d 104, 106, the court said:

"To our mind, the framers of the Montana Constitution who expressly forbade the Legislature to authorize lotteries or gift enterprises and commanded it to pass laws to prohibit the sale of lottery or gift enterprise tickets in Article XIX, § 2, of the Montana Constitution, were seeking to suppress and restrain the spirit of gambling which is cultivated and stimulated by schemes whereby one is induced to hazard his earnings with the hope of large winnings. The statutes which define and prohibit lotteries must therefore be interpreted with this purpose in mind." See also State ex rel. Harrison v. Deniff, 126 Mont. 109, 245 P.2d 140; State v. Tursich, 127 Mont. 504, 267 P.2d 641.

66

It is clear from the foregoing cases that the Legislature ·could not constitutionally legalize lotteries.

We have also held that the people exercising the initiative are subject to the same rules as the Legislature. See State ex rel. Palagi v. Regan, 113 Mont. 343, 126 P.2d 818; State ex rel. Bonner v. Dixon, 59 Mont. 58, 74, 195 P. 841.

■■ It might be argued that if, when an unconstitutional portion of a statute is stricken, and if the remainder is complete in itself and capable of being executed in accordance with the intent, that the remainder might be sustained. (See State ex rel. Evans v. Stewart, 53 Mont. 18, 161 P. 309; State ex rel. Esgar v. District Court, 56 Mont. 464, 185 P. 157; Maddox v. Board of State Canvassers, 116 Mont. 217, 149 P.2d 112; Application of O'Sullivan, 117 Mont. 295, 158 P.2d 306, 161 A.L.R. 487). But, a reading of Measure No. 63 clearly shows no possibility of separating parts of the measure. Even though some forms of gambling may not be prohibited by the Constitution, and could therefore be legalized, still the term "gambling" as used here is so broad as to include all forms prohibited. The main provision of the proposed measure is in a single sentence. Thus, the Measure stands or falls in its entirety. Even if we were to consider it in separate parts, it would fail because of Article V, § 23, of the Constitution of Montana, because it would contain more than one subject, and further the title refers not just to "prohibiting" gambling but also even "restricting" gambling. Apparently this would even prohibit taxing or licensing gambling, thus depriving the state of possible revenue which incidentally, we are told, is one of the virtues of the Initiative. The title is to say the least misleading. See Sawyer Stores v. Mitchell, 103 Mont. 148, 62 P.2d 342.

It is thus seen that considering Measure No. 63 as an Initiative, it would enact a clearly and palpably unconstitutional act.

■ If it be considered as an amendment to the Constitution, it fails of course, because it does not comply with Article

XIX, §§ 8 or 9, which set forth the manner of constitutional amendment.

Having determined the unconstitutionality of Measure No. 63, we shall turn briefly to the defense set forth in the answer that this court does not have jurisdiction to determine the validity of the Measure.

The plaintiff in this action complains that he, and other members of the public similarly situated, will be obligated, required and compelled to pay for, and to participate in, an election. This is admitted in the answer and it is also admitted that the cost attendant is a "large sum."

In State ex rel. Livingstone v. Murray, 137 Mont. 557, 354 P.2d 552, we did enjoin the submission of a proposed constitutional amendment to the voters on the ground that the proposal was unconstitutional.

Also in Burgan & Walker, Inc., v. State Highway Commission, 114 Mont. 459, 471, 137 P.2d 663, 669, this court enjoined an election, the court saying in part:

"Chapter 217 being thus hopelessly inconsistent, irreconcilable, impossible of effectuation and void because of uncertainty, and therefore ineffectual and inoperative for any purpose, we must accordingly enjoin the holding of the election as an unauthorized and useless and meaningless act."

Also in Sawyer Stores v. Mitchell, 103 Mont. 148, 176, 62 P.2d 342, 355, we said:

"The facts hereinbefore stated present a case affecting directly the interests of the whole people of this state. We are governed by laws, which are enacted either by direct vote, as here, or by representatives chosen by us. Every citizen of this state is interested in seeing to it that our laws are obeyed. Every taxpayer of this state is interested in seeing to it that the public funds are not expended uselessly. Certainly, in a matter of such importance as the submission of this measure, which it is proposed to adopt as one of the laws by which we are to be governed, every person within the state is vitally interested.

68

This court, in the case of State ex rel. Clarke v. Moran, 24 Mont. 433, 63 P. 390, supra, had under consideration the right of the people to choose their representatives, and in speaking of the importance thereof said: 'The facts stated present a case affecting directly the interests of the whole people of the state. In our representative form of government, the whole people are interested in having the election laws enforced, to the end that the best possible results may be obtained. Especially is this true when we are engaged in the selection of men to whom we, at the same time, intrust the power to enact laws for the state, to otherwise regulate public affairs, and to provide for the collection, appropriation, and disbursement of the public revenues. Not only is every patriotic citizen interested in the selection of suitable candidates for members of the lawmaking body, but every citizen in the state has a direct personal interest in the proper conduct of the election by which a choice of candidates is made.' Voting upon the adoption of a law is most certainly of as much importance as choosing our officers.

"But, as hereinbefore noted, in the submission of this proposed measure, certain statutes of this state have been utterly ignored, and, as a result, if the measure were submitted in the manner proposed, and adopted, that result would not represent the will of the electors of this state.

"From all of the foregoing, we conclude that the public is vitally interested in this matter; that the liberties of the people of this state are involved; and therefore, that, in so far as this phase of the matter is concerned, the objection that this court is without jurisdiction is not sustained."

We recognize that there are other views in other states. In State ex rel. Public Service Comm'n of Montana v. Brannon, 86 Mont. 200, 213, 283 P. 202, 208, 67 A.L.R. 1020, this court said:

"* * * A law may be enacted by the people exercising the initiative or by the people acting through the Legislature. In

either case the power to enact a law is illimitable, *except as restrained by the Constitution."* (Emphasis supplied.)

Thus, in Montana, this court has, on occasion, enjoined an election where the statute initiated is substantively unconstitutional. (For other views see 19 A.L.R.2d 521.) We do add, however, that the factual situation here is such that purported Initiative Measure No. 63 seems almost designedly drafted to be unquestionably and palpably unconstitutional on its face.

We have not discussed other features of proposed Initiative Measure 63, such as the alleged procedural defects as to signatures.

We do, however, make note of the following. On July 10, 1964, on the same day this court issued an order to show cause directed to the Secretary of State, respondent in this action, John J. McCarthy, Attorney at Law, of Butte, Montana, appeared before the Chief Justice of this Court. He inquired, and was specifically informed that the order to show cause had issued. He, McCarthy, expressed satisfaction over the date of the return, that is, July 22nd, and indicated that he was likely to appear in the cause in some manner.

The said John J. McCarthy is the same counsel appearing on what purports to be two actions in the Federal Courts in which this Supreme Court and its individual Justices are named defendants. We take notice that it is alleged in paragraph 8 of the Complaint in Cause No. 1164 in the District Court of the United States for the District of Montana, Butte Division, and in paragraph V of what is entitled Petition for Writ of Mandamus, without number, in the United States Circuit Court of Appeals for the Ninth Circuit that the plaintiff represented by the same counsel, had no notice or opportunity to be heard. Whereas, in fact, this court was led to believe by statements of Mr. John J. McCarthy that he would in fact appear in some form in the action before the Montana Supreme Court.

The plaintiff in the purported Federal Court actions, referred to above, has never applied to any state court of this

70

state for any legal remedy, even though as set forth above, it appears that he has had complete and full opportunity to so do through his acknowledged legal counsel.

For the foregoing reasons, the writ of injunction heretofore issued in this cause was ordered.