No. 86-383

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

STATE OF MONTANA, ex rel., ROBERT
BOESE,

       Petitioner and Relator,

  -vs-

JIM WALTERMIRE, Secretary of State,
State of Montana,

       Defendant,

    and

THE CONSUMER COMMITTEE TO DECONTROL
MILK PRICES IN MONTANA,

       Real Party in Interest.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Petitioner/Relator:

        Linnell, Newhall & Martin; Kevin C. Meek, Great Falls,
        Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Elwood English, Secretary of State's, Helena, Montana

    For Real Party in Interest:

        Michael D. Cok, Bozeman, Montana
        Steve McGregor, pro se for Consumer Committee to Decon-
        trol Milk Prices, Bozeman, Montana

---

           Submitted: October 9, 1986
            Decided: December 10, 1986

Filed: DEC 10 1986

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Petitioner asked this Court to declare Initiative 104 (the Milk Decontrol Initiative) void and invalid, and to enjoin the Secretary of State from allowing it to appear on the November 1986 ballot. In an order signed October 2, 1986, we denied petitioner's request. This opinion explains the reasoning behind that order.

The issues are:

1. Does petitioner have standing to bring this action?

2. Does the title to Initiative 104 clearly express the subject of the Initiative as required by the Montana Constitution, and does it violate the Constitution by failing to disclose the creation of cooperative associations and the repeal of Fair Trade Rules statutes?

In March 1986 the form of the Milk Decontrol Initiative was approved by the Secretary of State, pursuant to § 13-27-202(3), MCA. The Attorney General then set forth the statement of purpose, fiscal note, and statement of implication which would appear on the Initiative for circulation. See § 13-27-312, MCA.

The proponents of the Initiative requested review in District Court of the statement of purpose and the fiscal note pursuant to § 13-27-316(1), MCA. A compromise agreement was reached between the proponents and the Attorney General. Then the petition was circulated to Montana voters, and enough voter signatures were obtained for the Initiative to be placed on the ballot.

The petitioner, a Montana taxpayer, property owner, elector, and milk producer, asks us to remove the Initiative from the ballot. He argues that this Court has jurisdiction

2

to exercise pre-election review of an initiative and that he has standing to bring this action. He asserts that the title of the Initiative is defective in several ways: (1) it misleads the voters by implying that the state would lose only some, and not all, of its power to regulate the processing, storage, and distribution of milk; (2) it does not disclose that the Initiative gives "special powers and privileges" to cooperative associations; and (3) it fails to disclose the Initiative's repeal of the Rules of Fair Trade Practices, §§ 81-23-303 through -305, MCA.

I

Does petitioner have standing to bring this action?

Petitioner correctly states that he has standing to bring this action under this Court's decision in State ex rel. Wenzel v. Murray (1978), 178 Mont. 441, 585 P.2d 633. That case involved a pre-election challenge to a proposed initiative which would have given Montana voters the power to approve or reject any proposed nuclear power facility certified under the Montana Major Facility Siting Act. This Court held "[t]he relator as a taxpayer, property owner and elector, has standing to sue to prevent the waste of public monies . . . and accordingly had the right to bring this action." Wenzel, 585 P.2d at 638. Like that relator, petitioner is a taxpayer, property owner, and elector. He has standing to bring this action.

II

Does the title to Initiative 104 clearly express the subject of the initiative as required by the Montana Constitution, and does it violate the Constitution by failing to disclose the creation of cooperative associations and the repeal of Fair Trade Rules statutes?

3

Section 13-27-316(2), MCA, provides for challenges to an initiative's title by opponents of the initiative:

> If the opponents of a ballot measure believe that the statement of purpose, the statements of implication of a vote, or the fiscal statement formulated by the attorney general pursuant to 13-27-312 do not satisfy the requirements of 13-27-312, they may, within 10 days of the date of certification to the governor that the completed petition has been officially filed, file an action in the district court in and for the county of Lewis and Clark challenging the adequacy of the statement and requesting the court to alter the statement.

The legislative history of § 13-27-316, MCA, indicates that the legislature intended a clear and speedy means by which both proponents and opponents could attack the sufficiency of statements of purpose and implication and fiscal notes. The statutory procedure allows district court and Supreme Court review for correction of any deficiencies so that the initiative might still be presented to the voters at the general election. In the present case, the Initiative was certified to the Governor on July 10, 1986. Under the statute the opponents had 10 days from then to file an action in the District Court of Lewis and Clark County. Instead, the petitioner waited until August 19, 1986, to file his petition in this Court. Clearly he failed to make any attempt to follow the statutory procedures of § 13-27-316(2), MCA.

It is important to consider the procedure set forth in § 13-27-316(2), MCA, with other sections covering initiatives. Under § 13-27-202(3), MCA, before a petition for an initiative may be circulated for signatures, a sample sheet must be submitted to the Secretary of State. The Secretary of State then refers a copy of the petition to the Attorney General for his approval and the Secretary of State and Attorney General each review the petition and approve or

4

reject the form. Last, under paragraph 4 of § 13-27-202, MCA, the Secretary of State makes a final decision on approval or rejection of the form of the petition. If the Secretary of State approves the petition, he sends written notice to the proponents within 28 days of submission. If the Secretary of State rejects the petition, he must send written notice to the proponents within 14 days of submission.

The proponents have a right under § 13-27-316(1), MCA, within 10 days of notice of the Secretary of State's rejection or approval, to file an action in the District Court of Lewis and Clark County challenging the adequacy of the statement. In the present case that was done and an agreement was reached so that the challenge was satisfied.

The notice provisions pertaining to the opponents of the measure, such as the petitioner in the present case, do not require that the opponent immediately come into the District Court or otherwise act in order to oppose an initiative. Instead, the statute reasonably allows the initiative procedure to go ahead. The proponents may proceed to obtain signatures on the petition. If they are able to obtain sufficient signatures to meet the statutory requirements for placing the initiative on the ballot, then the petitions must be filed with the Secretary of State. At that point the Secretary of State under § 13-27-308, MCA, is required to certify to the Governor that the completed petition has been officially filed, entitling the initiative to be placed on the ballot. It is that certification to the Governor which triggers the time in which the opponents of the measure may act. Under § 13-27-316(2), MCA, the opponents have 10 days after that date to file a challenge in the District Court of Lewis and Clark County. This procedure allows the opponents

5

to an initiative to prepare for a court challenge from the time the petition is initiated until ten days after all necessary voter signatures have been obtained, but does not require them to act until after sufficient signatures have been obtained to allow a vote by the people of Montana. While the ten day period allowed after certification is not long, the statutes provide for immediate access to the courts, § 13-27-316(3)(a), MCA, and for correction of the challenged title in time so the initiative can still appear on the ballot. The five days allowed for appeal to this Court is similarly of significant benefit because it allows this Court to review the challenge without a time delay which would interfere with the initiative's appearing on the ballot. We conclude this is a reasonable procedure so far as opponents are concerned.

Petitioner argues that this Court may exercise original jurisdiction over this matter despite his failure to comply with § 13-27-316(2), MCA. He cites State ex rel. Steen v. Murray (1964), 144 Mont. 61, 394 P.2d 761. In that case, the Secretary of State was enjoined from placing a gambling initiative on the ballot. This Court held that the initiative was unconstitutional on its face because it directly contradicted Art. XIX, § 2, Mont. Const. In contrast, the petitioner here has failed to demonstrate that the Milk Decontrol Initiative is unconstitutional on its face. Additionally, the opinion in Steen was issued before § 13-27-316, MCA, was enacted.

This Court has exercised jurisdiction to consider a pre-election constitutional challenge to an initiative since the enactment of § 13-27-316, MCA. That case, State ex rel. Harper v. Waltermire (Mont. 1984), 691 P.2d 826, 41 St.Rep.

6

2212, involved a challenge to the text, not the title, of the initiative.

Petitioner cites Art. V, § 11(3), Mont. Const., as the basis for his objections to this Initiative. That section requires that "[e]very bill . . . shall contain only one subject, clearly expressed in its title." We have a fair provision at § 13-27-316, MCA, which allows adequate opportunity for both opponents and proponents to go before both the district court and this Court. To excuse the opponent from complying with the statute would eliminate a primary intention of the statute: to allow any insufficiencies of title to be corrected in time for the initiative to be placed on the ballot. If we proceeded as requested by the petitioner, we would substantially negate the initiative right by allowing the petitioner in effect to lie in wait in the weeds and have an initiative eliminated even though the title was correctable under the statutory provisions.

We conclude that to effectively protect and preserve the right which Montanans have reserved to themselves to change the laws of this State through the initiative process, pre-election judicial review should not be routinely conducted. We hold that the petitioner has failed to demonstrate any reason to allow him to sidestep the procedural requirements of § 13-27-316(2), MCA. In our order dated October 2, 1986, we therefore dismissed the petition.

_____
Justice

We Concur:

7

_____
                Chief Justice

_____
                  Justices

8

Mr. Justice John C. Sheehy, concurring and dissenting:

I concur that the petition here should be dismissed. I dissent from the reasons stated by the majority for the dismissal.

In the general election of November 4, 1986, Initiative 104 did not muster enough votes from the electorate to become law. Because of the failure of the Initiative to gain passage, the issues raised by the petition, filed before the general election, have become moot. For that reason alone, the petition should be dismissed. There is no reason to discuss the issues raised by the petition further.

I dissent from the reasons given for the dismissal of the petition by the majority because those reasons are wrong in law and in logic.

The implication to be gained from the majority opinion is that unless the opponents of an initiative measure proceed under § 13-27-316(2), MCA, they are thereby precluded from any other judicial relief from a flawed initiative proposal. That implication is reached without an adequate discussion in the majority opinion as to the statute that is involved nor its interpretation.

Section 13-27-316(2), is _permissive_ rather than _mandatory_. Its permissive character is not discussed in the majority opinion and for purposes of this dissent, I set it forth here.

> (2) If the opponents of a ballot measure believe that the statement of purpose, the statements of implication of a vote, or the fiscal statement formulated by the attorney general pursuant to 13-27-312 do not satisfy the requirements of 13-27-312, they _may_, within 10 days of the date of certification to the governor that the completed petition has been officially filed, file an action in the district court in and for the county of

9

Lewis and Clark challenging the adequacy of the statement and requesting the court to alter the statement. (Emphasis added.)

Two things ought to be clear from a reading of the foregoing statute. First, it pertains only to statements, and secondly, it is permissive, since the statute uses the word "may."

In our dissent in Cause No. 86-400, entitled State of Montana, ex rel., Montana Citizens for the Preservation of Citizens' Rights, et al., plaintiffs and relators vs. Jim Waltermire, Secretary of State, et al., defendants and respondents, and Montana Liability Coalition, real party in interest, we discussed the effect of that statutory provision. We said in our dissent:

> It is important to note that § 13-27-316 is not an imperative statute. The word "may" must be interpreted as permissive only. This Court has had a bitter experience in interpreting the word "may" as "must," which it did in State ex rel. Interstate Lumber Company v. District Court (1918), 54 Mont. 602, 172 P. 1030. The holding was repudiated in Hardenburgh v. Hardenburgh (1944), 115 Mont. 469, 146 P.2d 151, and in Johnson v. Ogle (1945), 117 Mont. 419, 159 P.2d 337. Following up on these cases, this Court in Love v. Mon-O-Co Oil Corporation (1958), 133 Mont. 56, 319 P.2d 1056, again decided that the word "may" should not be given the force of "must." Our last expression on the subject occurred in Clark Fork Paving, Inc. v. Atlas Concrete and Paving (1978), 178 Mont. 8, 582 P.2d 799, 781, where we said that the word "may" as an exception to the statute [a venue statute] "needs to be read as a permissive word, and not as the imperative must."

The majority opinion does not discuss this statute nor whether it is now by implication giving the word "may" the imperative force of "must" as far as legal actions to correct statements in initiative proposals are concerned. The implication in the majority opinion is that a failure to apply to the District Court in Lewis and Clark County within 10 days of the day of certification to the governor precludes

10

all further judicial review of initiative proposal. That is an unwarranted, unnecessary and improper restriction on the judicial power. When initiative proposals affect directly the interests of the whole people of this state, when the public is vitally interested in the matter, and when the liberties or the property of the people of this state are involved, we should as a Court insist on the full jurisdiction of the district courts and of this Court to review and protect those rights and liberties.

The second issue adverted to by the majority opinion but not properly treated is whether Initiative 104 contained more than one subject.

Article V, § 11(3), 1972 Mont. Const., provides that: "[e]ach bill . . . shall contain only one subject, clearly expressed in this title." We held in State ex rel. Steen v. Murray (1964), 144 Mont. 61, 66, 394 P.2d 761, 764, that the provisions of a like constitutional section in the 1889 Montana Constitution applied to initiative procedures.

Because Initiative 104 failed to gain the approval of the electorate, whether the initiative was multiplicitous is also now moot. Instead of so treating the issue, the majority opinion considers the issue foreclosed because the opponents did not bring an action within 10 days from the governor's certification under § 13-27-316(2), MCA. That basis for handling the issue is clearly wrong. Section 13-27-316(2) applies to actions brought with respect to the statements contained in the Initiative. The statute does not apply to objections such as multiplicity in an initiative proposal. An initiative which is multiplicitous cannot be cured through an amendment of a statement of purpose because the statement itself will be multiplicitous if it correctly

11

portrays the effect of the initiative. Clearly the right to resort to the judicial power to correct multiplicitous initiatives cannot be considered circumscribed, limited and prohibited by § 13-27-316(2).

For the reasons foregoing, although I concur in the dismissal of the petition here, I cannot agree with the majority in the reasons given for the dismissal.

_____
                Justice

I concur in the above dissent of Mr. Justice Sheehy.

_____
                Justice

I join in the dissent of Mr. Justice Sheehy.

_____
                Justice

12