CHIEF JUSTICE GRAY,
dissenting.
¶73 I respectfully dissent from the Court’s reversal of the District Court regarding the sufficiency of the Attorney General’s statements. I join the portions of Justice Nelson’s dissent that relate directly to the legal merits on that issue, and would affirm the District Court. Consequently, like Justice Nelson, I must address the District Court’s determination that the signatures gathered on petitions containing the Attorney General’s flawed statements are not invalid. Unlike Justice Nelson, I would affirm the District Court on that issue as well.
¶74 Section 13-27-316(3)(b), MCA, provides that “[a] statement certified by the court must be placed on the petition for circulation and on the official ballot.” The State of Montana argued in the District Court-as it does here-that if a court certifies a statement, it must then invalidate petitions and signatures thereon which contain the Attorney General’s flawed statements. The District Court relied on State ex rel. Boese v. Waltermire (1986), 224 Mont. 230, 730 P.2d 375, in finding the State’s argument “unpersuasive.” There, this Court addressed § 13-27-316(2), MCA, in the initiative statutes, which gives opponents of a ballot measure a 10-day period to institute a legal challenge to the Attorney General’s statements about the measure; that subsection, of course, is the “flip side” of § 13-27-316(1), MCA, the same 10-day period utilized by Proponents of the ballot measure before us in the present case. We concluded that the Legislature’s intent was to provide “a clear and speedy means by which both proponents and opponents *65 could attack the sufficiency” of an attorney general’s statements, and to allow trial court and Supreme Court review “for correction of any deficiencies so that the initiative might still be presented to the voters at the general election.” Boese, 224 Mont. at 232, 730 P.2d at 376. Here, the District Court reasoned that invalidating the previously gathered signatures would contravene these purposes. The District Court also stated that, while the Attorney General’s statements were insufficient and warranted correction, they were not “so inaccurate or misleading as to warrant invalidating signatures already gathered.” I agree entirely with the District Court.
¶75 The State attempts to distinguish Boese on grounds that an opponent’s challenge pursuant to § 13-27-316(2), MCA-rather than a proponent’s challenge pursuant to § 13-27-316(1), MCA-was at issue in that case, and the challenge in Boese took place before the petition was circulated, unlike the challenge in this case. These factual distinctions do, of course, exist. They do not impact in any way, however, on the gravity and weight of our statements in Boese, or on the importance of the constitutional right of the people of Montana to amend law or the Constitution itself via the initiative process. See Art. Ill, Sec. 4, and Art. XIV, Sec. 9, Mont. Const.
¶76 The State also contends the purposes stated in Boese are frustrated here because § 13-27-316(1), MCA, and other statutes are designed to prevent proponents of ballot measures from “lying in wait in the weeds” so they may collect signatures under one set of statements and seek votes under another. Given the State’s conduct and arguments in the matter now before us, this contention should offend every citizen of Montana regardless of his or her views on this ballot measure. It certainly offends me.
¶77 It is undisputed in this case that Proponents timely filed their complaint pursuant to § 13-27-316(1), MCA, on March 13, 2006. Summons issued that day and was served on the Attorney General the following day, March 14, 2006. Proponents filed an amended complaint, containing relatively minor changes, on March 22 and served it on the Attorney General the same day. The State’s answer was not filed until April 21, 2006. It is fair to inquire which party was “lying in wait in the weeds” with regard to moving this litigation forward.
¶78 Moreover, it is my view that any notion by the State that Proponents desired to seek signatures under one set of statements and votes under another is ludicrous in light of the fact that the timing of the petition and signature gathering processes-pursuant to the *66 statutory requirements-essentially forced them to collect signatures on petitions containing the very statements by the Attorney General which they timely challenged in the District Court and on which they prevailed there and should prevail here. Indeed, some of the State’s contentions in this appeal cause me concern about its commitment to the initiative process.
¶79 Returning to the State’s reliance on § 13-27-316(3)(b), MCA, the State argues that, because the court’s certified statements must be placed on the petition for circulation thereunder, and in this case were not, the signatures on Proponents’ petitions must be invalidated (thereby, of course, prohibiting the initiative from being placed on the ballot for a vote). In interpreting statutes, courts employ principles designed to give effect to the legislative will, to avoid an absurd result, to view the statute as a part of a whole statutory scheme and to forward the purpose of that scheme. Orr v. State, 2004 MT 354, ¶ 25, 324 Mont. 391, ¶ 25, 106 P.3d 100, ¶ 25 (citation omitted). Here, the plain language of § 13-27-316(3)(b), MCA, states that any statement certified by the court must be placed both on the petition for circulation and on the official ballot, and supports the State’s argument. It is my view, however, that application of that language in these circumstances would frustrate the overall purpose of § 13-27-316, MCA, which is intended, ultimately, to afford Montana voters the opportunity to vote on an initiative — with statements which meet statutory requirements to assist in their understanding. In this respect, I agree with the District Court’s implicit characterization of its corrections in this case as clarifications, rather than major alterations calling into question the validity of the signatures.
¶80 In addition, I believe a literal construction of § 13-27-316(3)(b), MCA, leads to an “absurd result,” in that it penalizes the proponents of a proposed initiative-whether they be the Governor, labor unions or Proponents here-for successfully challenging an attorney general’s statements and ensuring that legally appropriate language is placed before Montana voters. Indeed, a future -unscrupulous attorney general could intentionally write biased and inaccurate statements of purpose and implication and then, when those statements were rejected by a court, play the final “trump card” by successfully urging application of the language in § 13-27-316(3)(b), MCA. I cannot believe the Legislature intended to vest such power in an attorney general. I also am concerned that future initiative proponents might face the “Hobson’s choice” of accepting an attorney general’s insufficient-even *67 biased and inaccurate-statements or risking the loss of previously gathered signatures after a successful court challenge.
¶81 Finally, heeding Orr’s reminder of the importance of viewing a statute as part of an entire statutory “scheme,” I observe § 13-27-312(5), MCA, provides that “[t]he statement of purpose, unless altered by a court under 13-27-316, is the petition title for the measure circulated by the petition and the ballot title if the measure is placed on the ballot.” (Emphasis added.) I interpret this language to mean that-if a court alters the statement of purpose pursuant to § 13-27-316, MCA, between the gathering of signatures and the finalizing of the ballot-the petition title and ballot title necessarily cannot be the same and, therefore, the signatures on a petition with a statement of purpose differing from that on the ballot are valid. Indeed, I believe the “unless altered” language in § 13-27-312(5), MCA, reflects legislative anticipation of the very circumstance presented here-a court’s alteration of a statement of purpose between the time allowed for gathering signatures via petition and finalizing the ballot.
¶82 I dissent from the Court’s opinion reversing the District Court’s determination that the Attorney General’s statements were not sufficient, and from its resulting failure to address whether the District Court correctly refused to invalidate the signatures. I would affirm the District Court in both respects.