FILED

12/18/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0324

DA 24-0324

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 313

COTTONWOOD ENVIRONMENTAL
LAW CENTER; LIZ AMETSBOSCHLER;
DANNY CHORIKI; JEREMY DRAKE;
AVIV GUSCIO; KATIE HARRISON;
YOUPA STEIN; MARY STRANAHAN;
JANS SWANSON and THOMAS WALDORF,

     Plaintiffs and Appellees,

   v.

STATE OF MONTANA,

    Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
               In and For the County of Lewis and Clark, Cause No. BDV 2023-754
               Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Austin Knudsen, Montana Attorney General, Michael Russell, Thane
          Johnson, Alwyn Lansing, Assistant Attorneys General, Helena, Montana

          Emily Jones, Jones Law Firm, PLLC, Billings, Montana

     For Appellees:

          John Meyer, Cottonwood Environmental Law Center, Bozeman, Montana

          David K. W. Wilson, Jr., Robert Farris-Olsen, Morrison Sherwood Wilson
          & Deola, PLLP, Helena, Montana

                        Submitted on Briefs:  November 20, 2024
                               Decided:  December 18, 2024

Filed:

                       _____
                                   Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     The State of Montana appeals from a March 19, 2024 Partial Summary Judgment Motion Order (Order) of the First Judicial District Court.  The District Court struck § 7-5-131(2)(f), MCA (2023), as facially unconstitutional.  We reverse.

¶2     We restate the issue on appeal as follows:

*Whether § 7-5-131(2)(f), MCA (2023), limiting the right of local citizen initiatives to regulate "auxiliary containers" is facially unconstitutional under Article XI, Section 8, of the Montana Constitution?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In 2021, the Legislature passed House Bill 407 (HB 407).  *See* 2021 Mont. Laws ch. 220.  The purpose of the Bill was "to preempt any local ordinance, resolution, initiative, or referendum regulating the use, disposition, sale, prohibitions, fees, charges, or taxes on certain containers."   Section 7-1-121(1), MCA (2021 Mont. Laws ch. 220, § 1(1)).[1] Section 7-1-121(2), MCA, prohibited a local unit of government from adopting or enforcing any local ordinance, resolution, initiative, or referendum that regulated, taxed, or prohibited the use or sale of "auxiliary containers," which included, among other things, single use plastic bags, utensils, and packaging.  *See also* § 7-1-121(4), MCA.

¶4     Bozeman adopted a self-government charter in 2000.  HB 407 also amended § 7-1-111, MCA, which prohibits local government units with self-government powers from exercising certain powers, to prohibit them from exercising "any power as prohibited in [§] 7-1-121(2) affecting, applying to, or regulating the use, disposition, sale,

---

[1] Unless otherwise noted, all references to statutes are to the 2023 versions of the law.

prohibitions, fees, charges, or taxes on auxiliary containers, as defined in [§] 7-1-121(4)." Finally, HB 407 amended § 7-5-131, MCA, which extends the powers of initiative and referendum to the electors of each local government, to prohibit the power of local initiatives from regulating auxiliary containers, as defined in § 7-1-121(4), MCA. Section 7-5-131(2)(f), MCA.

¶5      On October 12, 2023, Isaac Cheek, a Cottonwood Environmental Law Center (Cottonwood) member, submitted a local ballot initiative petition (Petition) to the Gallatin County Election Office that would regulate single-use plastics in Bozeman. On November 1, the Gallatin County Election Administrator, Eric Semerad, rejected Cheek's Petition, citing Bozeman City Attorney Greg Sullivan's review letter that the Petition was outside the local initiative power based on § 7-5-131(2)(f), MCA. On November 28, Cottonwood and other plaintiffs filed a complaint for declaratory and injunctive relief challenging the constitutionality of HB 407. Cottonwood's first claim for relief was for a declaration that §§ 7-1-121, and -5-131(2)(f), MCA, were unconstitutional on their face under Article II, Section 1, Article V, Section 1, and Article XI, Section 8, of the Montana Constitution. Cottonwood's second claim for relief was for a declaration that §§ 7-1-111(21), and -121, MCA, were unconstitutional under the Montana Constitution's guarantee of the inalienable right to a clean and healthful environment.[2]

---

[2] This appeal comes to us from the District Court's certification of its order as a final order under M. R. Civ. P. 54(b) and our order allowing the appeal to proceed pursuant to M. R. App. P. 4(4)(b). *Cottonwood Env't Law Ctr. v. State*, No. DA 24-0324, Order (Mont. June 6, 2024). Cottonwood's second claim for relief regarding the constitutionality of HB 407 under the right to a clean and healthful environment is still pending before the District Court as the court granted the State's

3

¶6 On February 15, 2024, Cottonwood filed a motion for partial summary judgment on its first claim for relief. The District Court granted Cottonwood's motion on March 19, finding § 7-5-131(2)(f), MCA, unconstitutional under Article XI, Section 8, of the Montana Constitution. On April 21, Cottonwood moved for entry of final judgment on its first claim under M. R. Civ. P. 54(b)(1) as Gallatin County had indicated it would not process the Petition without a final judgment on the issue.[3] The District Court granted Cottonwood's motion on May 6 and the State filed its notice of appeal on Cottonwood's first claim on May 22.

## STANDARD OF REVIEW

¶7 "The constitutionality of a statute is a question of law, and we have plenary review of constitutional questions." *Mont. Democratic Party v. Jacobsen*, 2024 MT 66, ¶ 11, 416 Mont. 44, 545 P.3d 1074. A statute is presumed constitutional, and a facial challenge must show a law is unconstitutional in all its applications. *Jacobsen*, ¶ 11.

¶8 The Framers' intent controls our interpretation of a constitutional provision, which we discern not only from the plain language of the provision but also from "the historical and surrounding circumstances under which the Constitution was drafted, the nature of the subject matter the Framers faced, and the objective they sought to achieve." *Jacobsen*, ¶ 18.

---

request for additional time to conduct discovery. As it is not yet before us, we take no view of the merits of Cottonwood's second claim for relief.

[3] Notably, following the District Court's certification of its order as a final order, Gallatin County placed the initiative on the 2024 general election ballot, which passed with roughly 18,800 votes for and 10,800 votes against. *See* Gallatin County Election Results, available at https://perma.cc/J4CT-XHKQ (last visited Dec. 12, 2024).

**DISCUSSION**

¶9 *Whether § 7-5-131(2)(f), MCA (2023), limiting the right of local citizen initiatives to regulate "auxiliary containers" is facially unconstitutional under Article XI, Section 8, of the Montana Constitution?*

¶10 Prior to the 1972 Montana Constitution, counties, cities, or towns could only exercise powers expressly granted to them by the Constitution, statute, or arising by necessary implication therefrom, and any reasonable doubt concerning such powers were resolved against the municipality. *Tipco Corp. v. Billings*, 197 Mont. 339, 344, 642 P.2d 1074, 1077 (1982); *see also City of Missoula v. Armitage*, 2014 MT 274, ¶ 15, 376 Mont. 448, 335 P.3d 736. The 1972 Constitution, however, generally expanded the powers of local government units.[4] *See Armitage*, ¶ 16. The 1972 Constitution divided powers exercised by local government units into two-tiers: local government units without self-government powers, and those with self-government powers. *Compare* Mont. Const. art. XI, § 4, *with* Mont. Const. art. XI, § 6. Local government units without self-government powers have similar powers to those prior to the 1972 Constitution— generally only those provided or implied by law—yet the Framers instructed that their powers should be liberally construed instead of construing reasonable doubt against the government unit as before. Mont. Const. art. XI, § 4(2); *see also* Montana Constitutional Convention, Committee Proposals, Vol. II, p. 792 [hereinafter Committee Proposals] (describing a "somewhat liberalized version of the powers now exercised by the local units"); Montana Constitutional Convention, Verbatim Transcript, March 16, 1972, Vol.

---

[4] *See* Mont. Const. art. XI, § 1 (defining local government units to include counties and incorporated cities and towns).

VII, p. 2523 [hereinafter Convention Transcript] (proposing a "restatement of what we presently have" with two points of departure).

¶11 However, local government units that adopt self-government powers through a charter, *see* Article XI, Sections 5 and 6, of the Montana Constitution, will "share powers with the state government" and have "considerably more freedom in determining their local affairs." Committee Proposals, pp. 796–97. This new constitutional provision reversed the general rule requiring legislative action before local action was permitted:

> Legislative inaction no longer could block local action; instead, such inaction on the state level would serve as a go-ahead for local governments. Significantly, the "shared powers" concept *does not leave the local unit free from state control*; it does, however, change the basic assumption concerning the power of local government. At present [under the 1889 Montana Constitution], that assumption is that local government lacks power unless it has been specifically granted. Under the shared powers concept, the assumption is that local government possesses the power, *unless it has been specifically denied*.

> The legislature, in areas such as pollution control where statewide uniformity is desirable, still could impose statewide standards under the shared powers concept. Some areas—such as the definition and punishment of felonies—undoubtedly would be retained by the legislature.

Committee Proposals, p. 797 (italicized emphasis added); *see also* Convention Transcript, p. 2528 (discussing once a charter is adopted, it is the local government's form of government "and they don't have to follow any of the other statutes, except for . . . wherever they're limited [by the Legislature]"); Convention Transcript, pp. 2529–30; *Am. Cancer Soc'y v. State*, 2004 MT 376, ¶ 9, 325 Mont. 70, 103 P.3d 1085. Thus, "[a] local government unit adopting a self-government charter may exercise any power *not prohibited by this constitution, law, or charter*." Mont. Const. art. XI, § 6 (emphasis

6

added).[5]  *See also Armitage*, ¶ 17 ("The authority of a local government with self-government powers can be limited by express prohibitory language.").

¶12    Regarding the new provision directing the Legislature to "extend the initiative and referendum powers reserved to the people by the constitution to the qualified electors of each local government unit," Article XI, Section 8, of the Montana Constitution, the committee "believe[d] it [was] essential that local residents have the powers of initiative and referendum, particularly in view of the broad self-government powers offered in this proposal." Committee Proposals, p. 799; *see also* Convention Transcript, p. 2548 (same). The Framers did not discuss this new provision beyond the introduction given by Delegate Simon. The only other indication of what the Framers intended in the introduction is as a check on expanded *local* powers granted by Article XI. *See* Convention Transcript, p. 2549. Additionally, echoing our well-established rule that constitutional provisions bearing on the same subject matter be read and construed together, *see, e.g., Cross v. VanDyke*, 2014 MT 193, ¶ 17, 375 Mont. 535, 332 P.3d 215, the committee explained during debate on the local government provisions that the committee "ha[d] written it as a whole piece of cloth." Convention Transcript, p. 2513.

¶13    It is thus the clear intent of the Framers, and from the plain language of Article XI, Section 6, of the Montana Constitution, that the Legislature may place limits on the powers of local government, subject, of course, to other constitutional limits and rights.

---

[5] The State's citations to *Billings v. Herold*, 130 Mont. 138, 296 P.2d 263 (1956), and other pre-1972 decisions discuss local government powers under the 1889 Constitution and are thus inapposite to evaluate the new powers granted under Article XI, Section 6, of the 1972 Montana Constitution.

7

*Cf.* Convention Transcript, p. 2534 (Delegate Simon confirming that the Legislature could not usurp constitutional protections with local charters); Appellant's Opening Brief, pp. 13–14 ("simply because such rights are reserved [in the Constitution] does not mean that they cannot in some sense be limited by other constitutional provisions.").

¶14 Any limits on local government power must necessarily also include limits on the local power of initiative. Contrary to Cottonwood's position, the initiative power at any level—including local, statewide, and Constitutional amendments—has constraints. It is axiomatic that a statewide initiative to enact an unconstitutional law would fail. *See, e.g., State ex rel. Steen v. Murray*, 144 Mont. 61, 65–66, 394 P.2d 761, 763–64 (1964) (enjoining a proposed initiative that would directly conflict with the Constitution). Similarly, a Constitutional amendment would fail if it was unconstitutional under the United States Constitution. *Compare* Mont. Const. art. XIII, § 7 (prohibiting same-sex marriage under the Montana Constitution enacted by voter initiative November 2004), *with Obergefell v. Hodges*, 576 U.S. 644, 681, 135 S. Ct. 2584, 2607 (2015) (holding the United States Constitution guarantees the fundamental right to marry to same-sex couples in all states). We noted in *Steen* our prior holdings that "the people exercising the initiative are subject to the same rules as the Legislature." *Steen*, 144 Mont. at 66, 394 P.2d at 763. It follows that the people exercising the right to local initiative would similarly be subject to the same rules as local government units—i.e., local initiatives under Article XI, Section 8, of the Montana Constitution cannot exercise power prohibited by the constitution or law. Mont. Const, art. XI, § 6. Although we recognize "that the initiative power should be broadly construed to maintain the maximum power in the people," *State ex rel. Harper v.*

8

*Waltermire*, 213 Mont. 425, 429, 691 P.2d 826, 829 (1984), a local initiative could not preempt state law, just as a statewide initiative could not preempt the Constitution or a constitutional initiative could not preempt the United States Constitution. Cottonwood has not pointed us to any cases—in this jurisdiction or others—that have held otherwise.

¶15 The Legislature has enacted Title 7 dealing with local governments. Mindful of Article XI, Section 6, of the Montana Constitution, the Legislature enacted § 7-1-101, MCA, which allows "a local government unit with self-government powers [to] exercise any power *not prohibited by the constitution, law, or charter*." (Emphasis added.) The Legislature has also enacted § 7-1-111, MCA, which lists powers that local government units with self-government powers are prohibited from exercising. In 2021, HB 407 amended § 7-1-111, MCA, to prohibit local government units with self-governing powers from exercising any power to regulate auxiliary containers. *See* § 7-1-111(21), MCA.

¶16 By Article XI, Section 6, of the Montana Constitution's plain language and meaning, § 7-1-111(21), MCA, is constitutional and prohibits local government units with self-governing powers from exercising the powers listed.[6] As the people's right to initiative is subject to the same rules as local government units, it follows that even without considering § 7-5-131(2)(f), MCA, the people of a local government unit would not have

---

[6] The State argues that "HB 407 infringes on no rights under the Montana Constitution." But Cottonwood's claim under the right to a clean and healthful environment is not yet before us and we make no comment on the prohibition's constitutionality under that provision at this time.

9

the power to pass an initiative that the local government has been prohibited from exercising.[7]

¶17 The Dissent starts from the wrong place. It argues that a statutory restriction on the constitutional right of citizen's initiative is facially unconstitutional, notwithstanding that § 7-1-111(21), MCA, clearly limits local government power. Dissent, ¶ 25. While we agree with that sentiment, the Dissent ignores that "[s]tatutes are presumed constitutional." *Jacobsen*, ¶ 11. As noted, Cottonwood's claim that § 7-1-111(21), MCA, and the rest of HB 407 is unconstitutional under Montanans' right to a clean and healthful environment has not yet been decided by the District Court and is not before us. Section 7-1-111(21), MCA, is thus still a valid law and is the "context" before this Court. Unless and until the District Court declares that law unconstitutional as an infringement on the right to a clean and healthful environment, § 7-1-111(21), MCA, constrains local government power, which necessarily constrains local initiative power as explained above—making the initiative "facially defective" and "a senseless waste of time and money for all involved" as the law now stands. Dissent, ¶¶ 24–25.

## CONCLUSION

¶18 The District Court erred in finding § 7-5-131(2)(f), MCA, facially unconstitutional under Article XI, Section 8, of the Montana Constitution. The State may explicitly prohibit local government units with self-government powers from exercising powers under Article

---

[7] The State correctly notes that § 7-5-131(2)(f), MCA, does not—nor could it—prohibit the power of initiative on a statewide level as reserved to the people under Article III, Section 4(1), of the Montana Constitution.

XI, Section 6, of the Montana Constitution, and no claims are yet before us that the enacted laws infringe on any other rights under the Montana Constitution.

¶19    Reversed.


/S/ MIKE McGRATH


We Concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE


Justice Laurie McKinnon, dissenting.

¶20    Our Declaration of Rights begins by announcing the paramount role of popular sovereignty in the Montana constitutional cosmology: "All political power is vested in and derived from the people. All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole." Mont. Const. art. II, § 1. "Legislative power is vested in" a bicameral legislature and "the people reserve to themselves the powers of initiative and referendum." Mont. Const. art. V, § 1. We have continually held—and must continue to consider—that the Montana Constitution is a prohibition on legislative power, rather than a grant of power. *Board of Regents v. State ex rel. Knudsen*, 2022 MT 128, ¶ 11, 409 Mont. 96, 512 P.3d 748 (citation omitted).

¶21    The initiative power is obviously not unlimited. The people possess the power to "enact laws by initiative on *all* matters *except* appropriations of money and any local or special laws." Mont. Const. art. III, § 4 (emphasis added). Section 7-5-131(2), MCA,

11

proscribes that power when the people exercise their right to initiative or referendum in six instances. The first four provide that the people may not exercise the power of initiative in matters related to:

(a) The annual budget;
(b) Bond proceedings, except for ordinances authorizing bonds;
(c) The establishment and collection of charges pledged for the payment of principal and interest on bonds;
(d) The levy of special assessments pledged for the payment of principal and interest on bonds; . . . .

Section 7-5-131(2)(a)-(d), MCA. Those four provisions reiterate the constitutional limits on the initiative authority regarding appropriations of money. Mont. Const. art. III, § 4. The fifth circumstance prohibits initiative and referendum related to "the prioritization of the enforcement of any state law by a unit of local government." Section 7-5-131(2)(e), MCA. This provision comports with our "distinction between legislative and administrative or quasi-judicial acts in relation to the powers of initiative and referendum." *Town of Whitehall v. Preece*, 1998 MT 53, ¶ 18, 288 Mont. 55, 956 P.2d 743. A legislative act is one which "creat[es] a new law" and an administrative act relates to the "execut[ion of] an already existing law." *Preece*, ¶ 18 (quotation omitted). Initiatives related to the former are permissible exercises of popular sovereignty; initiatives on the latter are not. *Preece*, ¶¶ 24, 26 (Article VI, Section 4, does not reserve "executive power to the people by initiative and referendum" and Article VII, Section 1, does not reserve judicial power the same way Article V, Section 1, of the Montana Constitution reserves "the powers of initiative and referendum as to legislative acts only" to the people). The sixth and final category of initiative forbidden under § 7-5-131(2), MCA, emerges from no other provision

12

of the Montana Constitution. Instead, the sixth category prohibits local initiatives to regulate "auxiliary containers." Section 7-5-131(2)(f), MCA. The legislature has defined "auxiliary containers" to refer to "a bag, cup, bottle, can, device, eating or drinking utensil or tool, or other packaging, whether reusable or single use" made of cloth, paper, plastic, carboard, Styrofoam, or similar materials designed for transporting, consuming, or protecting consumer goods or food. Section 7-1-121(4)(a), MCA. None of these words appear in or relate to the limitations found in Article III, Section 4, of the Montana Constitution.

¶22     The Court is correct that Article XI, Section 6, of the Montana Constitution grants local governments the authority "to exercise any power not prohibited" by other Constitutional provisions, local government charter, or state statute." Opinion, ¶ 11. Yet, the question before us today is whether the District Court correctly determined a restriction on initiative power by the legislature impermissibly restricts the Bozeman citizens' constitutional right to enact laws through initiative. Instead, the Court has endeavored to answer the question of whether §§ 7-1-111, -121, MCA, prohibit the *city* of Bozeman from enforcing an initiative which seeks to regulate single-use plastics. This qualitative distinction between the respective constitutional initiative powers wielded by Montana citizens, exercised either through statewide Article V, section 1, of the Montana Constitution initiative power or as a local Article XI, Section 8, of the Montana Constitution initiative power, versus the powers afforded to local governments was dispositive for the District Court. The ruling below correctly identified the distinction between local authority and the people's much broader initiative power. Cottonwood

13

sought and secured a declaration from the District Court that § 7-1-131(2)(f), MCA, presents a facially unconstitutional infringement of their right to enact laws through initiative and referendum.

¶23    Here, the Montana Constitution is clear that the people reserve the power to enact laws through initiative and referendum.  Section 7-1-131(2)(f), MCA, impedes this power and is therefore facially unconstitutional.  The Court understands—and I do not contest— that the Montana Constitution constrains the powers of local governments adopting self-governance to those powers which do not explicitly conflict with the Montana Constitution, the local government's own charter, or laws of the State.  Mont. Const. art. XI, §§ 5-6.  However, the proposition that "any limits on local government power must necessarily also include limits on the local power of initiative," Opinion, ¶ 14, is unsupported by the plain meaning of the Montana Constitution.  To arrive at this conclusion tethering local initiative power to local government power, the Court relies in part on *Steen* to support preempting initiatives which, if passed, would be impossible to reconcile with the Montana Constitution.  Opinion, ¶ 14 (quoting *Steen*, 144 Mont. at 66, 394 P.2d at 763). *Steen* concerned a 1964 initiative to declare that the "Legislative Assembly of Montana shall have no power to prohibit gambling in the State."  *Steen*, 144 Mont. at 63, 394 P.2d at 762.  The 1889 Montana Constitution established the legislature had "no power to authorize lotteries, or gift enterprises for any purpose," and instead directed that the legislature "shall pass laws to prohibit the sale of lottery or gift enterprises in the state." Mont. Const. of 1889, art. XIX, § 2.  Because the initiative there directly contradicted the express mandate that "the Legislature could not constitutionally legalize lotteries" and

14

because the initiative was not "an amendment to the Constitution," the Court upheld the injunction against the initiative. *Steen*, 144 Mont. at 66-67, 394 P.2d at 764. In contrast to the initiative in *Steen* that contradicted an express constitutional mandate, here the Court allows a statute to *preempt* a fundamental constitutional right of the people, in dereliction of the principle undergirding Montana's Constitution that "[a]ll government originates with the people, is founded upon their will only, and is instituted solely for the good of the whole," Mont. Const. art. II § 1, and that "Montana's Constitution is a prohibition on legislative power, rather than a grant of power." *Board of Regents*, ¶ 11 (citing *Board of Regents v. Judge*, 168 Mont. 433, 444, 543 P.3d 1323 (1975) (quoting *Cottingham v. State Board of Examiners*, 134 Mont. 1, 11, 328 P.2d 907, 913 (1958) (*overruled on other grounds State ex rel. Ward v. Anderson*, 158 Mont. 279, 293, 491 P.2d 868, 875 (1971)).

¶24 We have previously engaged in pre-election review of other proposed initiatives. Such "[j]udicial intervention in referenda or initiatives prior to an election is not encouraged." *Cobb v. State*, 278 Mont. 307, 310, 924 P.2d 268, 269 (1996). "To effectively preserve and protect the rights Montanans have reserved to themselves to approve and reject by referendum legislative acts and proposed constitutional amendments, pre-election judicial review is rare." *McDonald v. Jacobsen*, 2022 MT 160, ¶ 14, 409 Mont. 405, 515 P.3d 777 (citing *State ex rel. Boese v. Waltermire*, 224 Mont. 230, 234, 730 P.3d 375, 378 (1986); *Harper v. Greely*, 234 Mont. 259, 167-68, 763 P.2d 650, 655-56 (1998)). "Placing a facially defective measure on the ballot," thereby "'conveying the false appearance that a vote on the measure counts for something, when in fact the measure is invalid regardless of how the electors vote,'" constitutes "a senseless 'waste of

15

time and money for all involved.'" *McDonald*, ¶ 14 (quoting *Reichert v. State*, 2012 MT 111, ¶ 59, 365 Mont. 92, 278 P.3d 455).

¶25    However, Cottonwood's ballot initiative is not "facially defective." Indeed, the Plaintiffs continue to pursue their challenge to § 7-1-111(21), MCA, as a violation of their right to a clean and healthful environment under Article II, Section 3, and Article X, Section 2, of the Montana Constitution. That claim is not before us today. Opinion, ¶ 5 n.2. If the question before us was purely one of local regulatory power in the face of state law to the contrary, the analysis might merit a different conclusion. For example, a party that did not want to implement the ballot initiative and argued it was inconsistent with state jurisdictional and regulatory authority could initiate a proceeding to determine whether the ballot initiative exceeded local government authority and, by doing so, not interfere with the people's power of initiative. Or, if Bozeman, so convinced of the validity of the constraints on its self-government power imposed by § 7-1-111(21), MCA, refused to implement a successful initiative, Cottonwood could challenge Bozeman's inaction. Under either scenario, state jurisdictional and regulatory authority could be considered in the context of the local initiative without infringing on the people's constitutional right of initiative. Cottonwood's constitutional claims that § 7-1-111(21), MCA, violates the right to a clean and healthful environment notwithstanding, the Montana Constitution expressly authorizes the legislature to constrain local governments in precisely that manner. Mont. Const. art. XI, § 6. This method of state-wide governance is uncontested, either by the case presented by Cottonwood or within this dissent. Instead, § 7-1-131(2)(f), MCA, attempts a statutory restriction on the people's constitutional right of initiative—threatening the

16

"fundamental premise . . . at the very root of the constitutional system of government." *Regents*, ¶ 19. Article V, Section 1, of the Montana Constitution is clear: the people reserve to themselves the power of referendum and initiative—with no distinction between local or statewide initiatives. The legislature "*shall* extend the initiative and referendum powers reserved to the people by the constitution to the qualified electors of each local government unit." Mont. Const. art. XI, § 8 (emphasis added). The distinction between self-government power and the people's initiative power cannot be emphasized enough. The Montana Constitution places unique limitations and ascribes unique powers upon both.

¶26 Further, our holding in *Regents* supports invalidating § 7-5-131(2)(f), MCA, as a transgression by the legislature beyond its constitutionally mandated role. In *Regents*, this Court held that the Montana Constitution conferred specific authority over the Montana University System (MUS) to the Board of Regents (Board) which the legislature could not usurp. *Regents*, ¶ 23. There, the legislature passed a bill (HB 102) prohibiting the Board from "regulating the possession, transportation, or storage of firearms on MUS campuses." *Regents*, ¶ 23. At the time, the Board had determined "the presence of firearms on MUS campuses presents an unacceptable risk to a safe and secure educational environment." *Regents*, ¶ 21. Because the Montana Constitution specifically vests the Board with "full authority to determine the priorities of the MUS"—including campus safety—we invalidated HB 102 as an impermissible "legislative directive" encroaching upon the Board's specific constitutional duties to manage the MUS. *Regents*, ¶ 23; *see also* Mont. Const. art. X, § 9(2). We were careful to note that the *Regents* holding did not "elevate the Board and MUS to a fourth branch of government or provide the Board veto power over

17

state laws it disagrees with." *Regents*, ¶ 24. Rather, our holding was grounded in "where legislative action infringes upon constitutionally granted powers of the Board to supervise, coordinate, manage, and control the MUS, the legislative power must yield." *Regents*, ¶ 24.

¶27 Here, § 7-5-131(2)(f), MCA, likewise encroaches on a specific power reserved in the Montana Constitution by the people. The people of Montana are not a presumed fourth branch of government, but rather their popular sovereignty animates "all government of right." Mont. Const. art. II, § 1. Like the Board of Regents, the Montana Constitution affords specific powers to the people and no reasonable rule of construction permits the encroachment upon the powers constitutionally conferred on another. *Regents*, ¶ 19. Unlike *Regents*, where the MUS or Board were not contemplated in the same section granting legislative power to the legislature, the people's right to initiative was in fact included—and included immediately—within the very same provision enabling the legislature. Mont. Const. art. V, § 1. The specific and narrow limitations on the people's initiative powers enshrined in the Montana Constitution simply do not contemplate curtailing that power when the people seek to regulate "auxiliary containers." The Legislature's encroachment upon the people's right to initiative must therefore yield. "No branch of government has, in default of its constitutional obligation to act, the power to, *de facto*, write out of the constitution important rights and guarantees which the people sought to secure to themselves." *Columbia Falls Elem. Sch. Dist. No. 6. v. State*, 2005 MT 69, ¶ 54, 326 Mont. 304, 109 P.3d 257 (Nelson, J., concurring).

18

¶28 As the District Court observed, the State's argument that state statutes providing for a statewide policy can restrict the people's constitutional right of initiative is the equivalent of stating that the Constitution may be amended by statute. Such a patently absurd assertion upends elementary principles of constitutional supremacy. I dissent.

/S/ LAURIE McKINNON

Justice Ingrid Gustafson joins in the dissenting Opinion of Justice Laurie McKinnon.

/S/ INGRID GUSTAFSON