No. 14466

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

_____

STATE ex rel., WILLIAM J. WENZEL,

Relator,

-vs-

FRANK MURRAY, SECRETARY OF STATE
OF THE STATE OF MONTANA,

Respondent.

_____

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Hooks and Budewitz, Townsend, Montana
Thomas Budewitz argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mike McGrath argued, Assistant Attorney General, Helena, Montana
Steven J. Perlmutter (Intervenor) argued, Helena, Montana

_____

Submitted: September 22, 1978

Decided: OCT 3 1978

Filed: OCT 3 1978

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivers the Opinion of the Court.

The prayer of relator for an injunctive order is denied and his complaint dismissed for the reasons expressed herein.

Relator, William J. Wenzel, filed on August 30, 1978, his complaint requesting this Court to issue a permanent injunction restraining and enjoining respondent Secretary of State, State of Montana, from taking any action to submit Initiative No. 80 to the electors at the general election to be held on November 7, 1978.

The original complaint of the relator, and his memorandum filed therewith, raised questions of sufficient import that a majority of this Court deemed it necessary that a response be ordered from the Secretary of State and the matter be set for adversary hearing. On September 6, 1978, we issued an order directing service of the complaint upon the Secretary of State and the Attorney General, requiring a response within fifteen days, and setting the matter for adversary hearing on September 22, 1978.

Responses and memoranda have now been received from all parties, as well as from Nuclear Vote, an applicant for intervention, and opportunity for oral argument granted to all parties.

Initiative No. 80 is a proposed act empowering Montana voters to approve or reject any proposed nuclear power facility certified under the Montana Major Facility Siting Act. The initiative was approved as to form and title by the Attorney General on March 14, 1978. On July 21, 1978, the Secretary of State notified the Governor that sufficient qualified electors had signed petitions to place Initiative No. 80 on the ballot for the upcoming general election.

-2-

As required by law (section 37-127(3), R.C.M. 1947), the Attorney General has drafted and submitted to the Secretary of State an explanatory statement as to Initiative No. 80, which will be submitted to the voters at the time they cast their votes for or against the proposed Initiative. That explanatory statement is as follows:

> "The initiative would impose rigid restrictions before a nuclear facility could be built. Restrictions include:
>
> "1. Posting a bond equaling not less than 30% of the capital costs of the facility to insure against liability.
>
> "2. A showing radioactive material can be contained with no reasonable chance of escape.
>
> "3. Comprehensive testing of similar physical systems in actual operation.
>
> "4. Approval by the Board of Natural Resources.
>
> "5. Approval by a majority of Montana voters in an election called by initiative or referendum.
>
> "The initiative would forbid limitations on the rights of persons to seek compensation for injuries resulting from operation of the facility."

Relator, as a Montana property owner, taxpayer, and registered elector, alleged in his complaint that Initiative No. 80 is illegal in that its title does not clearly express the subject matter of the Initiative, the Attorney General's explanatory statement does not give a true and impartial statement of the purposes of the Initiative, and the statement of the implications of the vote on the ballot form does not clearly explain the meaning of the vote for or against the issue. Relator further contends the Initiative is unconstitutional as special legislation and for the further reason that Congress has pre-empted the authority to regulate radiation hazards.

On these grounds, relator contends the expenditure of public monies by the Secretary of State in putting Initiative No. 80 to a vote is illegal, unconstitutional, and injurious to relator and all other taxpayers and electors similarly situated.

It appears by affidavit of the Chief Deputy Secretary of State that since the filing of the action in this Court, but before oral argument thereon, the Secretary of State's office has certified, on September 8, 1978, all ballot measures to the county clerks, as required by section 37-135, R.C.M. 1947. It further appears that the duty of the Secretary of State to furnish a voter information pamphlet for all ballot measures must be distributed to the qualified electors 30 days prior to the election. The Secretary of State, because of the time requirement, has committed himself to order 500,000 such pamphlets, and submitted final proofs to the printer before September 12, 1978. The final press run on these pamphlets began on September 17, 1978, and the pamphlets will be shipped directly to the county clerks by the printer. Any change of the ballot form would require an insert to be prepared by the Secretary of State, requiring approximately 10,000 pounds of paper, and additional costs of printing and shipping. In addition, the inserts would have to be manually placed in each pamphlet by the county clerk and recorder in each respective county.

The ballot form to which relator objects as to the implication of a vote for or against the measure is stated in the following language:



"FOR giving Montana voters power to approve or reject any proposed major nuclear power facility and establishing nuclear safety and liability standards

"AGAINST giving Montana voters power to approve or reject any proposed major nuclear power facility and establishing nuclear safety and liability standards."

The principal issues argued by relator are (1) both the Attorney General's statement, and his statement of the implication of the vote for or against on the form ballot, are insufficient and inadequate because they do not inform the voters that a vote for the measure would in effect be a ban or prohibition of nuclear power plants in Montana; (2) to adopt Initiative No. 80 would be illegal because the Congress has pre-empted the field of nuclear power plant regulation.

The Secretary of State, the Attorney General and intervener counter these issues by defending the title of the Initiative, the form of the explanatory statement, and the ballot form. They contend further relator has no standing to sue in this action and that relator's complaint does not raise a justiciable controversy. The Attorney General further charges laches on the part of the relator.

The Title of the Act

The title of the Initiative as certified to the Governor by the Secretary of State, is as follows:

"AN ACT EMPOWERING MONTANA VOTERS TO APPROVE OR REJECT ANY PROPOSED NUCLEAR POWER FACILITY CERTIFIED UNDER THE MONTANA MAJOR FACILITY SITING ACT; DEFINING TERMS; ESTABLISHING STATE SAFETY AND FINANCIAL LIABILITY STANDARDS FOR MAJOR NUCLEAR FACILITIES; EXEMPTING MEDICAL AND RESEARCH FACILITIES; PROVIDING FOR PUBLICATION OF EMERGENCY EVACUATION PLANS; INVALIDATING EMERGENCY APPROVAL AUTHORITY FOR NUCLEAR FACILITIES; AMENDING SECTION 70-804, REVISED CODES OF MONTANA, 1947."

The 1972 Mont. Const., Art. VII, §11(3), provides that an act "shall contain only one subject, clearly expressed in its title". Relator contends the foregoing title of the Initiative is misleading in that it does not clearly express the subject matter.

The source of relator's contention lies in section 4(1)(a) of the Initiative, which contains a requirement that no certificate to construct a nuclear facility may be issued by the board unless it first finds that no limits exist regarding the rights of a [person] to bring suit for and recover full and just compensation from the entities responsible for the nuclear plant and further that no legal limits exist regarding the total compensation recoverable from such responsible parties. Relator contends the clear import of the restrictions in section 4(1)(a) and other related provisions is to ban the construction of any and all power facilities in the State of Montana. He further contends the provisions of the Price-Anderson Act, particularly Title 42, U.S. Code, §2210, provides for a top total liability for a single nuclear incident of $560 million. Relator states this limitation of recoverable amount contained in the federal statute cannot be squared with the language in the proposed Initiative. Therefore, says relator, an applicant for a proposed nuclear facility in Montana could not comply with both the State and federal provisions respecting limits of liability and right to recovery, and in effect the passage of Initiative 80 would be a ban on the erection of any nuclear facilities in this State.

Respondent and intervention petitioners answer relator's contention in two ways. First, they claim under the Price-Anderson Act, the Nuclear Regulatory Commission (NRC) has the power to waive the $560 million limitation in exchange

-6-

for a promise from an applicant for permission to build a nuclear plant, that the applicant waives the usual common law defenses and statutes of limitation with respect to possible claimants and accept "strict liability" as to the plan, design, direction, maintenance and operation of the plant. Therefore, respondents contend there is no impossible clash between the proposed Initiative and the Price-Anderson Act. Second, they maintain there is a presumption against pre-emption as between State and federal regulations (Savage v. Jones (1912), 225 U.S. 501, 32 S.Ct. 715, 56 L Ed 1182); that utility siting is traditionally within State control (Rice v. Santa Fe Elevator Company (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L Ed 1447); and that Congress has not in any event pre-empted the whole of the nuclear power plant field, but at most a limited portion thereof (Kelly v. Washington (1937), 302 U.S. 1, 58 S.Ct. 87, 82 L Ed 3).

The Attorney General, on behalf of respondent, Secretary of State, adds that Initiative No. 80 is not unconstitutional on its face and that until the Initiative has become codified as law, there is no justiciable controversy in existence now for this Court to decide. The Attorney General also contends the preponderant weight of authority throughout the United States is that enactment of legislation may not be enjoined on the grounds of alleged substantive unconstitutionality, citing Bardwell v. Parrish Counsel (LA 1949), 44 S.2d 107, 19 A.L.R. 2d 514; State ex rel. Kittel v. Bigelow (Ohio 1941), 37 N.E.2d 41; Unlimited Progress v. City of Portland (Oregon 1958), 324 P.2d 239 and cases annoted in 19 A.L.R. 2d 519.

We must agree with the Attorney General, that after examination of the provision of the proposed Initiative, on its face, the Initiative is not unconstitutional. This takes it out of the operation of State ex rel. Steen v. Murray

-7-

(1964), 144 Mont. 61, 394 P.2d 761, where this Court did enjoin the Secretary of State from placing an Initiative on the ballot which was on its face unconstitutional because it would preclude the legislature from prohibiting gambling.

We therefore examine the title of the Initiative based upon the provisions of the Initiative itself. We find the title conforms to the constitutional rule that the subject of the Initiative text be clearly expressed in the title. We make that determination based upon the rules of construction set out in State v. McKinney (1904), 29 Mont. 375, 74 P. 1095; and Evers v. Hudson (1907), 36 Mont. 135, 142, 92 P. 462.

### The Attorney General's Statement

Relator's contentions with respect to the Attorney General's statement are akin to his objections to the title of the Initiative. Relator contends the statement should inform the voter that the proposed Initiative is in effect a "ban" or a "prohibition" on nuclear facilities in the State, and that the Attorney General should use those words or words of like import in his statement.

In Sawyer Stores, Inc. v. Mitchell, et al. (1936), 103 Mont. 148, 62 P.2d 342, this Court enjoined the Secretary of State from placing an Initiative which purported to tax chain stores on the ballot. This Court found the explanatory statement, then written by the Secretary of State, was clearly misleading, in that it did not mention the tax applied not only to chain stores, but to individually-owned stores. We do not have that situation here. The statement of the Attorney General as we have quoted it above, fairly states to the voters what is proposed within the Initiative.

-8-

Relator contends the Attorney General has no discretion in this matter and that because in relator's view, the proposed Initiative is indeed a ban, the Attorney General must be directed to insert the words "ban" or a similar word in his statement to the voters. We hold, however, that as long as the Attorney General in his explanatory statement uses "ordinary plain language," explains the general purpose of the issues submitted, in language that is true and impartial, and not argumentative or likely to create prejudice either for or against the issue, he has followed the law (section 37-127(3), R.C.M. 1947). His discretion as to the choice of language in following the provisions of section 37-127(3) is entirely his.

We do not find the word "ban" or a word of like import should be contained in the statement for the same reasons that we do not find such words necessary in the title of the Initiative.

### Standing to Sue Issue and Justiciable Controversy

The relator as a taxpayer, property owner and elector, has standing to sue to prevent the waste of public monies, Sawyer Stores Inc. v. Mitchell, supra, and accordingly had the right to bring this action. Unfortunately, because of the lapse of time here and the necessity for the Secretary of State to comply with the election laws, expenses have been incurred and will be incurred by the Secretary of State that are unavoidable, although this action was pending. Therefore, most of relator's attempt to save public money has now gone by the boards. Nevertheless, he has standing to sue in this action.

The question of whether he presents a justiciable controversy however, is a quite different question. The Initiative has not been approved or adopted, no applicant

-9-

appears yet for a certificate of authority to locate a nuclear power facility and no present rights of such an applicant are involved in this case. We said in Holt v. Custer County (1926), 75 Mont. 328, 243 P. 811:

> "To invoke the jurisdiction of a court of justice, it is essential that there be involved a genuine existing controversy calling for the adjudication of present rights involved. The courts are not constituted nor operated for the vindication of parties with respect to their conception of the correct application of the law, and it does not devolve upon them to decide questions not arising in the due course of litigation simply for the gratification of the parties or others." 75 Mont. at 331.

The controversies upon which relator relies are the possible pre-emption of the field by the federal Congress and the possible inability to comply both with the Initiative and the Price-Anderson Act. These are matters not presently before us because proper parties to raise such issues and to define and delineate the same in litigation are not before us. Accordingly, we do not find a justiciable controversy about which we must make a decision is presented by the relator's complaint.

### Interpretation of this Opinion

There are other contentions raised by relator and other parties, but they need no discussion by us, as we are of the opinion Initiative No. 80 is validly proposed for adoption or rejection by the electors at this time. We also find that the Attorney General's statement of the implications of the vote are fairly stated.

Beyond stating the Initiative is one properly submitted for a vote, nothing in this opinion should be interpreted as an expression of opinion by us, one way or the other, as to the merits of the proposed Initiative, or as to any future issues of constitutionality or validity therein, or

-10-

the application of the provisions of the Initiative, if it should be adopted into law. This opinion is limited to the proposition that we find nothing in the matters presented to us that invalidates the submission of Initiative No. 80 to a vote.

The complaint of relator for an injunction is denied and the complaint dismissed. It is not necessary to act on the intervener's application for intervention. No party is entitled to costs or attorney fees from any other party.

_____
_____
Justice

We Concur:

_____
Chief Justice

_____
_____
_____
Justices