No. DA 06-0509

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 192

_____

CITIZENS RIGHT TO RECALL, a Political Committee;
TREVIS BUTCHER, individually and as Political Committee
Treasurer; EDWARD B. BUTCHER, individually and as
Political Committee Chairman,

        Plaintiffs and Appellants,

    v.

STATE OF MONTANA, by and through MIKE McGRATH,
in his capacity as the Attorney General; and BRAD JOHNSON,
in his capacity as Secretary of State,

        Defendants and Respondents.

_____

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark, Cause No. CDV-2006-167
                The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

            Chris J. Gallus, Attorney at Law, Helena, Montana

        For Respondents:

            Hon. Mike McGrath, Attorney General; Pamela D. Bucy and Anthony
            Johnstone, Assistant Attorneys General, Helena, Montana

            Janice Doggett, Legal Counsel, Montana Secretary of State, Helena,
            Montana

_____

                Submitted on Briefs:  August 3, 2006
                          Decided:  August 17, 2006

Filed:

            _____
                       Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Citizens Right to Recall and its representatives (Appellants) appeal from the order of the District Court of the First Judicial District, Lewis and Clark County, affirming the draft ballot statements for Constitutional Initiative Number 98 (CI-98) prepared by Attorney General Mike McGrath (Attorney General).  We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2     Appellants are proponents of CI-98 which, in Appellants' own words, "would, among other things, give voters a constitutional right to recall elected justices or judges if and when voters determine that appropriate cause exists."   Appellants submitted text of CI-98 to Montana Legislative Services in January 2006 in accord with the requirements of § 13-27-202(1), MCA.  The Attorney General prepared a first draft of CI-98's ballot statements and circulated them for comment to eleven different parties that shared a potential interest in the ballot measure.  Appellants responded with proposed revised ballot statements.

¶3     The Attorney General's statement of purpose reads as follows:

> Montana statutes currently provide for the recall of public officials, including state court justices or judges, for physical or mental lack of fitness, incompetence, violation of the oath of office, official misconduct, or conviction of a felony offense.  This measure amends the Montana Constitution to provide for recall by petition of state court justices or judges for any reason.  It is effective upon approval.

¶4     The Attorney General's statements of implication for CI-98 read:

> [ ] FOR amending the Montana Constitution to provide for recall by petition of state court justices or judges for any reason.
> [ ] AGAINST amending the Montana Constitution to provide for recall by petition of state court justices or judges for any reason.

2

¶5     The Secretary of State approved the Attorney General's statements on March 3, 2006.  Appellants filed a complaint on March 13, 2006, challenging the statements and requesting the District Court to alter the statements to comply with § 13-27-312, MCA. The District Court held a hearing on July 7, 2006.  The court determined that the Attorney General's statements satisfied the statutory requirements and issued an order on July 10, 2006, affirming the Attorney General's ballot statements.  Appellants exercised their right under § 13-27-316(5), MCA, and appealed the District Court's decision.

## STANDARD OF REVIEW

¶6     We generally review situations where, as here, the applicable law is undisputed and the issue is whether the facts satisfy the statutory standard, as mixed questions of law and fact.  *Stop Over Spending Montana v. State, ex rel. McGrath*, 2006 MT 178, ¶ 10, 333 Mont. 42, ¶ 10, ___ P.3d ___, ¶ 10, 2006 WL 2256486, ¶ 10.  We review mixed questions of law and fact *de novo*.  *Duffy v. State*, 2005 MT 228, ¶ 10, 328 Mont. 369, ¶ 10, 120 P.3d 398, ¶ 10.

## DISCUSSION

¶7     Whether the Attorney General's ballot statements for CI-98 satisfy the requirements of § 13-27-312, MCA.

¶8     Ballot statements are subject to court review for compliance with § 13-27-312, MCA.  *See* § 13-27-316(1), (2), (5), MCA.  The key provision of the statute requires that the statement of purpose and the statements of implication "express the true and impartial explanation of the proposed ballot issue in plain, easily understood language and may not be arguments or written so as to create prejudice for or against the measure."   Section

3

13-27-312(4), MCA. The statement of purpose shall "explain[ ] the purpose of the measure" in a statement not exceeding 100 words. Section 13-27-312(2)(a), MCA. The statement of implication shall "explain[ ] the implications of a vote for and a vote against the measure" in statements not exceeding 25 words each. Section 13-27-312(2)(b), MCA.

¶9 Appellants claim that neither the statement of purpose nor the statements of implication satisfy the statutory requirements in that they do not explain the purpose of the measure, they are not completely true and impartial, and that they are drafted so as to create prejudice against the measure. Appellants request that this Court exercise the authority granted to it in § 13-27-316(1), MCA, and rewrite the ballot statements to comply with § 13-27-312, MCA.

¶10 Courts in other jurisdictions almost universally apply the rule that they "do not sit as some type of literary editorial board." *Schulte v. Long* (S.D. 2004), 687 N.W.2d 495, 498. As a result, these courts will not "invalidate the summary simply because they believe a better one could be written." *Burgess v. Alaska Lieutenant Governor, Etc.* (Alaska 1982), 654 P.2d 273, 276, n.7. We agreed with these courts and expressly adopted a similar standard in *Stop Over Spending Montana*, ¶ 18. Accordingly, we defer to the Attorney General's rendition provided the statements meet the statutory requirements. We take this opportunity to expand upon the analysis contained in our recent decision in *Stop Over Spending Montana* on a challenge to another initiative statement.

4

¶11   Statement of purpose.

¶12   Appellants assert that the statement of purpose does not satisfy the statutory requirement that the statement "explain the purpose of the proposed measure" in light of the fact that "58% of the 100 words allowed by statute" focus on current law. *See* § 13-27-312(2)(a), MCA. Appellants claim that the first sentence creates prejudice in that it makes the "measure appear redundant and unnecessary."

¶13   We note initially that we review the District Court's ballot statements solely for compliance with § 13-27-312, MCA. *See* § 13-27-316, MCA. The statute does not grant Appellants the right to the ballot statements of their choosing. *Stop Over Spending Montana*, ¶ 18. We previously have determined that a statement that explains the measure in ordinary and plain language, is true and impartial, and not argumentative or likely to create prejudice for or against the measure constitutes compliance with the statute. *State ex rel. Wenzel v. Murray* (1978), 178 Mont. 441, 448, 585 P.2d 633, 637.

¶14   With respect to truthfulness, the first sentence of the Attorney General's statement regarding the existing law on the recall of state court justices and judges represents a true statement of the current status of Montana law. Section 2-16-603(1), MCA, provides for the recall of any public officer, including state court justices or judges. As the District Court concluded, the sentence provides context for the proposed measure.

¶15   Appellants' argument that the sentence does not "explain the purpose of the proposed measure" and therefore fails to meet § 13-27-312(2)(a), MCA's requirements, would be meritorious *only if* the first sentence constituted CI-98's entire statement of purpose. It does not, however, and must be read in conjunction with the remaining

5

sentences. The initial contextual statement read together with the following sentences explains the purpose of the measure—to amend the Montana Constitution to enshrine the right of citizens to recall state court justices and judges—in compliance with § 13-27-312(2)(a), MCA.

¶16 Appellants assert further that the Attorney General's statement of purpose omits salient provisions when it states that the measure amends the constitution to provide for recall "for any reason" without further explanation. The reason for requiring the statement of purpose "is to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." *Advisory Opinion re Term Limits Pledge* (Fla. 1998), 718 So.2d 798, 803. As a general matter, the "title and summary preceding an initiative need not contain a complete catalog or index of all provisions within the initiative." *People v. Flores* (Cal. App. 1986), 223 Cal. Rptr. 465, 470.

¶17 Appellants' measure is 885 words long. If passed, the measure would be the longest provision in the Montana Constitution by a factor of two. Appellants' brief requires approximately 193 words to describe the salient provisions that they claim the Attorney General's statement omits. We decline to hold that a statement of purpose that does not include the details of the measure's mechanisms, limitations, deterrent provisions for false reporting, waiting periods, voter percentage requirements, and legislatively imposed discretionary bond postings—all within 100 words—does not comply with the statute. *See e.g., United Gamefowl Breeders Ass'n v. Nixon* (Mo. 2000),

6

19 S.W.3d 137, 141 (noting that within the confines of the 100-word limit, the summary "need not set out the details of the proposal").

¶18 We recognize that the statutory 100-word limit inevitably leads to omission of some provisions that Appellants would like to include. As we stated in *Stop Over Spending Montana*, ¶ 17, "[n]ecessarily, a complete description of every part of the measure cannot be included." Nonetheless, it is not our prerogative to alter the statute that the Legislature has enacted. Section 1-2-101, MCA. The process of whittling an 885-word measure to a "true and impartial explanation" involves a degree of discretion entrusted to the Attorney General by the Legislature that we will not overturn absent noncompliance with the statute. *See Wenzel*, 178 Mont. at 448, 585 P.2d at 637-638. The Attorney General's decision to omit what Appellants characterize as "salient provisions" does not prevent a voter from casting "an intelligent and informed ballot." *Advisory Opinion*, 718 So.2d at 803.

¶19 Moreover, we conclude that the statement that the measure provides for judicial recall "for any reason" is true. Although the "salient provisions" that the Appellants seek to add likewise may be true, they simply explain the details of the measure as described above. The statement that CI-98 would allow voters to recall state court justices or judges "for any reason" accurately reflects the intent of the measure. Nowhere in its 885 words does CI-98 provide any limit on the reasons for which a judge or justice may be recalled. In fact, CI-98 provides explicitly that a justification statement declaring the reasons for petition for recall, "is sufficient if it sets forth *any reason* acknowledging electoral dissatisfaction with a justice or judge . . . ." (Emphasis added). Thus, the

7

Attorney General's statement represents a true and impartial explanation of CI-98 that the Attorney General wrote in plain language. *See* § 13-27-312, MCA.

¶20 We turn then to the question of whether the Attorney General's statement of purpose has been drafted so as to create prejudice against CI-98. We agree with Appellants that the statement of purpose must "eschew advocacy – argument – for or against the proposal's adoption." *Fairness and Acct. in Ins. Reform v. Greene* (Ariz. 1994), 886 P.2d 1338, 1346. Appellants cannot point directly to any language in the Attorney General's statement of purpose that violates this prohibition. Instead, Appellants must resort to claims that the statement's "limited explanation creates prejudice against the measure" and the Attorney General's statement of the current law regarding recall implies that the measure would appear "redundant and unnecessary."

¶21 In *Schulte*, the attorney general's explanation of a proposed ballot measure exempting food from the state sales and use taxes explained that the measure would exempt food from the taxes and further explained that the measure, if adopted, would "eliminate this source of revenue." *Schulte*, 687 N.W.2d at 499. The proponents claimed that the attorney general's ballot explanation was intended to create prejudice against the measure. The trial court agreed and ordered the attorney general to excise the offending "negative editorial statement." *Schulte*, 687 N.W.2d at 497. The South Dakota Supreme Court reversed and noted that the attorney general's explanation was a "narrowly crafted statement of the purpose and legal effect" of the measure. *Schulte*, 687 N.W.2d at 499. The court rejected notions that the statement created negative implications: "What is implied or suggested by the language used will obviously lie in the eye of the beholder

8

and will necessarily vary from reader to reader and voter to voter." *Schulte*, 687 N.W.2d at 500.

¶22    As noted above, the Attorney General's statement of purpose contains true statements and is impartial. We agree with the court in *Schulte* that any negative implications created by what the Attorney General chose to omit in the statement of purpose cannot support a claim of prejudice against the measure. Likewise, whether a voter interprets the Attorney General's accurate statement of the current law regarding recall to mean that CI-98 would be "redundant and unnecessary" does not rise to the level of creating prejudice against CI-98. In light of the Appellants' inability to point to any parts of the Attorney General's statement of purpose that are untrue or biased, we decline to conclude that the statement was drafted to create prejudice against CI-98 based upon possible negative implications from what the Attorney General chose to omit or implications from the Attorney General's decision to include the current state of the law regarding recall. *Schulte*, 687 N.W.2d at 500.

¶23    We reiterate that the Legislature has designed the intricate process by which Montana's citizens may amend our constitution. *See* §§ 13-27-101 to -316, MCA. The process involves the legislative services division, § 13-27-202 (1)(a), MCA, the Secretary of State, § 13-27-202(3), (4), (6), Montana voters, § 13-27-202(6), the Attorney General, § 13-27-312, MCA, and, if necessary, the judiciary, § 13-27-316(1), (5), MCA. Within this statutory scheme, the Legislature purposefully has inserted the Attorney General—an official elected by the citizens of Montana—to write the ballot statements after receiving input from "parties on both sides of the issue to obtain their advice." Section 13-27-

312(2), MCA. Within this scheme, the Legislature simply asks this Court to review the District Court's decision and determine whether the ballot statements meet the requirements of § 13-27-312, MCA. Sections 13-27-316(3)(a), (5), MCA.

¶24    Statements of implication.

¶25    Appellants allege similar inadequacies with the statements of implication as with the statement of purpose. Appellants claim that the statements of implication "fail to explain the purpose of the measure" and omit salient provisions that a voter should know before casting his or her vote regarding the measure. Appellants assert specifically that the statements of implication should inform voters about the possibility that a person who initiates a recall could incur liability for false statements in petitions, or the possibility of having to post a bond to cover costs for successive petitions, before deciding for or against the measure.

¶26    We note that the Legislature did not intend for the statements of implication to explain the purpose of the measure, as the statements of purpose serve that function. *See* § 13-27-312(2)(b), (4), MCA. The statute requires the statements of implication simply to explain the implications of a vote for and a vote against the measure. Section 13-27-312(2)(b), MCA. Once again, the 25-word limitation imposed by § 13-27-312(2)(b), MCA, necessarily forces the Attorney General to delete provisions Appellants would like to include. *Flores*, 223 Cal. Rptr. at 470. The discretion rests with the Attorney General and we will not disturb his language absent noncompliance with § 27-13-312, MCA. *See Wenzel*, 178 Mont. at 448, 585 P.2d at 637-638; *Stop Over Spending Montana*, ¶¶ 17-18.

¶27    Appellants argue that the portion of the statements of implication declaring that

10

the measure amends "the Montana Constitution to provide for recall by petition of state court justices or judges for any reason," could cause voter confusion and thereby create prejudice against the measure. Appellants contend that the voters erroneously could interpret the statements of implication to mean that state court justices or judges may petition for a recall, rather than a dissatisfied qualified elector. Although admittedly ambiguous, we fail to see how the statements would create prejudice against the measure and thereby fail to comply with § 13-27-312(4), MCA.

¶28 The lack of prejudice is evident by the fact that the two ways a voter could interpret the statement are both true. First, as intended by the Attorney General's statements of implication, CI-98 would authorize qualified electors to petition to recall judges or justices. And second, CI-98 similarly would authorize implicitly state court justices or judges, in their private capacity as qualified electors, to petition to recall one another. This potential ambiguity does not create prejudice against the measure as what is implied by the Attorney General's language "will necessarily vary from reader to reader and voter to voter." *Schulte*, 687 N.W.2d at 500. We will defer to the Attorney General's decision absent a violation of § 13-27-312, MCA. *Stop Over Spending Montana*, ¶ 18. The statements of implication are true, impartial, and plainly written explanations of a vote for and a vote against CI-98. *See* § 13-27-312, MCA.

## CONCLUSION

¶29 We agree with the District Court's conclusion that the Attorney General's statement of purpose and statements of implication comply with the requirements of § 13-27-312, MCA. The statements are all true and impartial reflections of CI-98, and the

11

Attorney General did not write them in a manner to create prejudice against CI-98. In light of our conclusion that the Attorney General's statements comply with § 13-27-312, MCA, we decline Appellants' invitation to rewrite CI-98's ballot statements. *Stop Over Spending Montana*, ¶ 18.

¶30 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART

/S/ MICHAEL C. PREZEAU
Hon. Michael C. Prezeau, District Court
Judge, sitting for Justice Jim Rice

/S/ DIRK M. SANDEFUR
Hon. Dirk M. Sandefur, District Court
Judge, sitting for Justice John Warner

Justice Patricia O. Cotter concurs.

¶ 31 I write separately to state my disagreement with the Court's conclusion at ¶ 27 that the statements of implication are "admittedly ambiguous." In my judgment, only a strained reading of the statements—one rendering them incomplete and illogical—would result in a perceived ambiguity. If the statements are read coherently, their meaning is clear. Otherwise, I concur in the Court's opinion.

/S/ PATRICIA COTTER

Justice James C. Nelson dissents.

¶32    I cannot join the Court's Opinion.  I dissent.

/S/ JAMES C. NELSON

Chief Justice Karla M. Gray, dissenting.

¶33    I respectfully dissent from the Court's opinion, which affirms the District Court's Memorandum and Order which—itself—is largely devoid of rationale.  I would reverse the District Court.

¶34    In an ordinary case, we could—and presumably would, or at least I would— remand to the District Court for entry of a more complete rationale for its dismissal of Appellants' complaint.  The District Court's order sets forth the Attorney General's statements and parties' arguments, quotes from a 1978 case regarding an attorney general's discretion and recites § 13-27-312(4), MCA.  Addressing Appellants' argument that the first sentence of the statement of purpose was prejudicial, the District Court did not apply the statute or the 1978 case, but instead "disagree[d]" with Appellants' argument because—although the court acknowledged Appellants had not argued the sentence was incorrect—"the sentence correctly states" the law that would be changed if CI-98 passed and, "as the [A]ttorney [G]eneral argue[d]," the sentence was "contextual" rather than "prejudicial" or "misleading."  After addressing a different argument, the court concluded the statements "express a true and impartial explanation . . . in easily

13

understood language" and "[t]he [Attorney General's] statements are not arguments nor are they written in such a manner as to create prejudice[.]" In my view, this "analysis"—consisting of bare statements without thorough reasoning or any application of law—does not provide a sufficient basis for this Court to review the District Court's decision. If time permitted, I would follow our practice of remanding to the District Court to provide us with something we could review properly. *See*, *e.g.*, *Marriage of Mills*, 2006 MT 149, ¶¶ 20-21, 332 Mont. 415, ¶¶ 20-21, ___ P.3d ___, ¶¶ 20-21; *In re Marriage of Bartsch,* 2004 MT 99, ¶ 20, 321 Mont. 28, ¶ 20, 88 P.3d 1263, ¶ 20; *Motta v. Philipsburg School Bd. Trustees*, 2004 MT 256, ¶¶ 26-27, 323 Mont. 72, ¶¶ 26-27, 98 P.3d 673, ¶¶ 26-27. Unfortunately, the timelines we face here do not permit the usual procedure and, thus, we are forced to "review" in somewhat of a vacuum.

¶35 I begin by disagreeing with both the District Court's and this Court's reliance on *Wenzel*, to support a conclusion that the Attorney General properly exercised his discretion in this case. There, the attorney general drafted an explanatory statement setting forth the major points of an initiative, including language that a nuclear facility could not be built unless approved by the Board of Natural Resources (board)—as well as by a majority of Montana voters—and a sentence stating "[t]he initiative would forbid limitations on the rights of persons to seek compensation for injuries resulting from operation of the facility." *Wenzel,* 178 Mont. at 443, 585 P.2d at 635. An opponent argued, among other things, that the initiative constituted a "ban" or "prohibition" because it precluded the board from issuing a certificate for construction of a nuclear facility unless it found that no limits existed with regard to the right to sue such a facility

or the amount of compensation that could be awarded in such a suit. *Wenzel*, 178 Mont. at 445-46, 585 P.2d at 636. Based on this interpretation of the initiative, the opponent argued the attorney general's statement should have included a word such as "ban" or "prohibition," and the attorney general had no discretion in that regard. The Court rejected that contention, holding that so long as an attorney general's language meets statutory requirements, he or she has discretion to choose the language for meeting those requirements. In so doing, the Court distinguished a prior case in which an explanatory statement was clearly misleading because it did not mention that a proposed tax would apply to individually-owned stores as well as chain stores. *Wenzel*, 178 Mont. at 447-48, 585 P. 2d at 637-38. I agree with the reasoning and result in *Wenzel*, but the present case bears little resemblance to it.

¶36 Sections 13-27-312(2)(a) and (4), MCA, require the Attorney General to write a statement of purpose for a ballot measure, not to exceed 100 words, which "express[es] the true and impartial explanation of the proposed ballot issue in plain, easily understood language . . . so as [not] to create prejudice for or against the measure." The District Court and this Court have concluded, and I agree, that the statement at issue contains fewer than 100 words and is in plain and easily understood language. The District Court and this Court also have concluded—at least in essence—that the Attorney General's statement of purpose expresses the true and impartial explanation of the ballot issue in a manner which does not create prejudice for or against it. I disagree strenuously with these conclusions.

¶37 In this regard, I agree with the Court about the impropriety of altering an attorney general's statements of purpose and implication when those statements comply with relevant statutes. I also agree with the Court's recognition that not every provision of an initiative—particularly an initiative as lengthy as CI-98—must be included in a statement of purpose or reflected in statements of implication. My disagreement stems from the Court's conclusion that the statements meet the statutory requirements of § 13-27-312(4), MCA. For the following reasons, it is my view that those conclusions are incorrect.

¶38 With regard to the "true and impartial" language contained in § 13-27-312(4), MCA, I offer the following interpretation which I believe reflects the Legislature's intent. Dictionaries contain multiple definitions of the word "true." For example, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1850 (4th ed. 2000), defines "true" as "[c]onsistent with fact . . . not false or erroneous." This is a commonly understood meaning of the term. The second sentence of the Attorney General's statement of purpose reads "[t]his measure amends the Montana Constitution to provide for recall by petition of state court justices or judges for any reason." In my view, this sentence is not factually correct because CI-98 provides for recall of a justice or judge if, and only if, petitioners gather a specified number of signatures and a majority of Montana electors vote for the recall at a subsequent election. I believe these provisions are essential to voters' understanding of the initiative and are not mere "details" subject to discretionary "whittling," as the Court suggests in ¶¶ 17-18. Thus, I conclude the Attorney General's statement of purpose is factually incorrect, and I would reverse the District Court on that basis alone.

¶39 In addition, I observe the word "true" does not appear on a stand-alone basis in § 13-27-312(4), MCA. It appears as part of the phrase "true and impartial explanation." In my opinion, that phrase requires the Attorney General's statement to comport with another definition of "true" from the same dictionary—namely, "[r]ightful; legitimate." In other words, I do not believe the Legislature intended to require mere factual correctness in the Attorney General's language. Such an interpretation would overweigh the word "true" and ignore the context in which the word appears. Nor do I believe the Legislature intended to hold the attorney general to such a low standard that almost any statement of purpose which was not factually incorrect would be legally correct and sufficient, whether or not it said anything substantive at all about the ballot measure. In other words, the attorney general would, effectively, be the "ballot measure czar"—with nearly absolute and unfettered discretion. This cannot be the intent of the Montana Legislature.

¶40 In light of the same dictionary's definition of "impartial" as "[n]ot partial . . . unprejudiced," and the language in § 13-27-312(4), MCA, requiring that the statement of purpose not create prejudice for or against the ballot measure, it is my view that—in addition to being factually incorrect—the Attorney General's statement of purpose in the present case is not rightful, legitimate, impartial or lacking in prejudice in explaining the ballot measure at issue here. I will explain.

¶41 There can be no dispute that CI-98 is lengthy and somewhat complicated. Indeed, I suspect all would agree that the task of fairly summarizing such a ballot measure in no more than 100 words is daunting. Nor, of course, must the full 100 words be used.

17

¶42 Here, the Attorney General's statement of purpose contains 64 words. Of those 64, 38 words are used to set out the "context" of CI-98 as "Montana statutes currently provide for the recall of public officials, including state court justices or judges, for physical or mental lack of fitness, incompetence, violation of the oath of office, official misconduct, or conviction of a felony offense." I do not disagree that context is appropriate, nor do I suggest any factual error in the 38 words. However, I strenuously disagree with the notion that using a majority of the words in a statement of purpose to set the context—rather than to *explain* the proposed ballot issue, as required by § 13-27-312(4), MCA—can produce a rightful, legitimate, impartial and unprejudiced explanation.

¶43 In this respect, I reiterate my firm conviction that, to understand CI-98, voters must be informed by the statement of purpose that the mere signing of a petition will not suffice, and that the petition must first be signed by a specific number of electors and then be subject to an election. Moreover, while I appreciate the Court's reasoning in ¶ 15 that the entire statement of purpose must be read together, I respectfully suggest that the primary purpose of an "explanation" should be to explain what a measure actually would do.

¶44 Having addressed the first and second sentences of the statement of purpose, I turn to the third sentence, which reads "[i]t is effective upon approval." This is the only sentence I believe is entirely appropriate as a partial explanation of CI-98.

¶45 I would reverse the District Court and hold that the Attorney General's statement of the purpose of CI-98 does not meet the requirements of § 13-27-312(4), MCA.

Consequently, I would conclude our statements regarding an attorney general's discretion in *Wenzel* are not applicable here.

¶46 Moreover, just as I believe the provisions regarding the requisite number of signatures and an election are essential and must be included in the statement of purpose, I also believe the statements of implication are insufficient because they do not set forth these aspects of CI-98. Therefore, I dissent from the Court's conclusion that the statements of implication meet the requirements of § 13-27-312(4), MCA.

¶47 Where, then, would my analysis leave this case if the Court agreed with it? Section 13-27-316, MCA, recognizes the potential for alteration by a court of an attorney general's statement of purpose and statements of implication. Under different circumstances, a remand to the District Court with instructions for that court to revise the Attorney General's statements would be appropriate. Here, however, such a remand— with the possibility of another appeal to this Court—is altogether impractical, given that the Secretary of State must certify the ballot no later than 75 days before an election. *See* § 13-12-201(1), MCA. This year, that deadline is August 24, 2006.

¶48 Given the pressing time constraint, I believe this Court would have no choice but to rewrite the statements for the ballot measure. Would this be an easy task? Certainly not. Would we all agree—initially—about what should and should not be contained in a factually correct, fair, impartial, easily understood and unprejudiced statement of purpose or in statements of implication? Of course not. But it is the business of this Court to agree, by majority vote, with every word contained in every Court opinion. The difficulty of agreeing on language in a statement of purpose and statements of

19

implication—I posit—is no more challenging than that we face on a daily basis in issuing opinions in the hundreds of cases we decide each year. The Court's unwillingness to undertake such an effort here simply does not comport with the manner in which we generally carry out our duty to decide difficult issues.

¶49 Thus, I would rewrite the Attorney General's statement of purpose as follows, realizing that—if the Court were willing to engage in this effort—it almost certainly would not be the language a majority of us ultimately would agree upon.

> This measure amends the Montana Constitution and other laws to provide that electors could petition for recall of Montana justices and judges for any stated reason(s), an easier process than current provisions for removal of judicial officers and current processes to recall elected officials for reasons such as lack of physical or mental fitness, official misconduct or conviction of a felony. The petition could not be filed before 60 days after the justice or judge takes office. If petitioners gather a specified number of signatures, an election (statewide, district, special) would be held. The measure is effective upon approval.

This statement of purpose, in my view, accurately and impartially melds the context with the main purpose of CI-98, which is to make judicial recalls—but not recalls of other elected officials—easier. It also explains important substantive components of the ballot measure in objective and easily understood language within the statutory maximum of 100 words. In this regard, I join the District Court and this Court in rejecting Appellants' quarrel with the use of the words "any reason." The words "any reason" for electoral dissatisfaction are taken from the very text of CI-98.

¶50 I concede my offered statement of purpose does not include every substantive component of CI-98. No statement containing a maximum of 100 words could do so. As mentioned above, I also concede other members of the Court might include components

20

of the measure different from those I chose to include. I am convinced we could work this out to the satisfaction of a majority of the members of this Court. We always do, because that is our job. I am surprised by the Court's unwillingness to engage in this important task to safeguard Montanans' cherished right to the initiative process as guaranteed by Article III, § 4 and Article XIV, § 9 of the Montana Constitution.

¶51 I also would propose altering the statements of implication as follows:

[ ] FOR amending the Montana Constitution to provide for recall of state court justices and judges for any stated reason upon sufficiently signed petition and election.
[ ] AGAINST amending the Montana Constitution to provide for recall of state court justices and judges for any stated reason upon sufficiently signed petition and election.

In my view, this language accurately reflects the true implications of CI-98. While I again acknowledge that other members of this Court might disagree with my exact wording, I am convinced we could resolve our differences and craft statements of implication comporting with § 13-27-312(4), MCA, if the Court were willing to do so.

¶52 Finally, if the Court were willing to rewrite the statement of purpose and statements of implication for CI-98, one remaining issue would require resolution: Appellants having gathered the required number of signatures under legally insufficient statements of purpose and implication, would CI-98 move to the November general election ballot, or would it be necessary to invalidate the signatures, thereby halting CI-98 in its tracks? In my opinion, CI-98 would proceed to the general election ballot, for the following reasons.

21

¶53 As set forth in my dissent to the Court's recently issued opinion in *Stop Over Spending Montana*, ¶ 79 (Gray, C.J., dissenting), I believe the overall purpose of the statutes providing for initiatives—including those statutes relating to court review of an attorney general's statements—is to afford Montana voters the opportunity to vote on an initiative with statements meeting statutory requirements to assist in their understanding. I also stated therein that I did not believe the Legislature intended to vest an attorney general with such power that he or she could write biased or inaccurate statements and then, when a court rejected those statements, play the final "trump card" of invalidating previously gathered signatures. *Stop Over Spending Montana*, ¶ 80. For those reasons—among others—I would have affirmed the district court's rewrite of the statement of purpose and rejection of the "invalidate the signatures" argument. *Stop Over Spending Montana*, ¶ 82.

¶54 While I would reach the same overall result here, the present case differs from *Stop Over Spending Montana* in certain respects. There, I agreed with the district court that, while the Attorney General's statements in that case warranted correction—or clarification, as I believed the district court implicitly characterized it—they did not warrant invalidation of obtained signatures. *Stop Over Spending Montana*, ¶¶ 74, 79. In my view, the Attorney General's statement of purpose for CI-98 is less defensible than that in *Stop Over Spending Montana* and, therefore, any court alteration of that statement would be more than a clarification. However, I would not penalize *Appellants* for gathering the requisite number of signatures to place the initiative on the ballot because they did so in spite of a statement of purpose and statements of implication that I

22

conclude were biased *against* the initiative. In other words, I do not believe the Attorney General's statements misled people into signing the petition; rather, it is my view that people signed the petition despite statements that could have discouraged them from doing so. Under these circumstances, I would not invalidate the previously gathered signatures.

¶55 Finally, I note the State's entirely speculative arguments that the timing of Appellants' challenge reflects a bad motive, as well as its arguments about what Appellants should have done and when they should have done it. Like it or not, Appellants timely filed their challenge under the controlling statute and, if any "suspicious" delay of these proceedings occurred, I would look—at least in part—to the State's filing of its answer nearly a month after the Appellants' complaint.

¶56 Under the circumstances of this case, I would hold that Montana law clearly provides CI-98 a path to the general election ballot, with corrections by this Court to the Attorney General's statements. To hold otherwise is, in my view, to vest in the attorney general nearly total control of what—and how—initiative measures will proceed to a general election. Neither the Montana Constitution nor Montana statutes contemplate such a result.

¶57 I dissent from the Court's failures to reverse the District Court, to rewrite the statements of purpose and implication for CI-98, and to permit CI-98 to appear on the November general election ballot in a fair and impartial manner for a vote by the people of Montana.

/S/ KARLA M. GRAY